TIM McCORMACK, P.J.:
*795 {¶ 1} Plaintiff-appellant, the state of Ohio (the "state"), appeals from the trial court's May 25, 2017 decision to grant defendant-appellee John Kafantaris's motion to dismiss the indictment based on preindictment delay. For the reasons that follow, we affirm.
Factual and Procedural History
{¶ 2} On August 31, 2016, Kafantaris was indicted on one count of rape in violation of R.C. 2907.02(A)(2) and one count of kidnapping in violation of R.C. 2905.01(A)(4) for offenses that allegedly occurred on September 5, 1996.
{¶ 3} On September 4, 1996, the alleged victim, E.M., met Kafantaris at Club 1148, a nightclub no longer in existence that was located in Cleveland's Flats. The two exchanged phone numbers, and early in the morning on September 5, Kafantaris called E.M. and asked to come over to her apartment on the west side of Cleveland.
{¶ 4} What follows is a summary of the events as described in the incident report from September 8, 1996. E.M. agreed to let Kafantaris come over to her apartment, but told him they would not have sex. Kafantaris arrived at the apartment around 4:30 a.m. Kafantaris started to kiss E.M. and try to pull her shorts down. She pulled away and resisted, telling him no. Kafantaris went to sleep in the bedroom. E.M. went into the living room. A short while later, she returned to the bedroom and got into bed with Kafantaris. Kafantaris tried to have sex with E.M. She told him that she was menstruating and was using a tampon. He pulled the tampon out and proceeded to have sex with her. E.M. reported that she asked Kafantaris to use a condom, but he refused, instead ejaculating on her bed sheets. E.M. reported that her clothes and sheets were bloody from the incident. Kafantaris ultimately left the apartment around 11 a.m. on September 5.
{¶ 5} At the urging of two friends, E.M. went to the hospital.
{¶ 6} On September 8, 1996, E.M. contacted the Cleveland Police Department to report the incident. Based on her statement, police retrieved her rape kit from the hospital and the bed sheets from her apartment.
{¶ 7} The September 8 incident report also noted that E.M. reported receiving several threatening phone calls from Kafantaris in the days following the incident. These alleged threats were never investigated.
{¶ 8} On October 8, 1996, E.M. met with the detective assigned to the case and informed him that because of personal reasons she did not wish to pursue the case. E.M. further explained that she had time to think about the situation and that she felt partially responsible for the incident. In response, the detective provided her with a no-prosecution form, which she signed without influence. The file was subsequently marked "exceptional cleanup," and the investigation effectively ceased.
{¶ 9} In March 2013, E.M.'s rape kit was submitted to the BCI as part of the sexual assault kit testing initiative, with the submission sheet listing John Kafas and John Kafantaris.
{¶ 10} In August 2016, police obtained a search warrant to collect a buccal sample from Kafantaris. Upon collecting that sample, it was sent to BCI with E.M.'s bed sheets. BCI tested the evidence and determined *796 that Kafantaris's DNA was found on the bed sheets. The August 31 indictment was the result of these tests.
{¶ 11} On October 19, 2016, Kafantaris filed a motion to dismiss the indictment based on preindictment delay. On December 30, 2016, the state filed a brief in opposition to Kafantaris's motion to dismiss. On January 23, 2017, the court held a hearing on the motion to dismiss. The corresponding journal entry notes that the parties were instructed to submit supplemental briefing by February 17, 2017.
{¶ 12} On February 17, 2017, the state filed a supplemental brief in opposition.
{¶ 13} On February 24, 2017, the trial court denied Kafantaris's motion to dismiss and issued a journal entry stating:
At this time, defendant's motion to dismiss for pre-indictment delay is denied. As this case continues, the trial court will allow the defendant to re-file this motion for further consideration by this court.
{¶ 14} On May 22, 2017, Kafantaris filed a supplemental motion to dismiss, relying largely on this court's decision in State v. Crymes , 8th Dist. Cuyahoga No. 104705, 2017-Ohio-2655, 2017 WL 1743873.
{¶ 15} On May 25, 2017, the trial court held a hearing on the supplemental motion to dismiss, in which the state argued that this case was factually distinguishable from Crymes , and Kafantaris rested on his supplemental motion. The trial court granted Kafantaris's motion to dismiss, stating in a journal entry, in relevant part:
After considering the facts presented at the motion to dismiss hearing, arguments of counsel, and State v. Crymes , 2017-Ohio-2655, the court grants the defendant's motion to dismiss.
{¶ 16} It is from this decision that the state appeals.
Legal Analysis
{¶ 17} In its sole assignment of error, the state argues that Kafantaris has failed to demonstrate that he suffered actual prejudice as a result of the nearly 20-year delay between the date of the alleged offense and the indictment. The state further argues that, even if Kafantaris suffered actual prejudice, the trial court's dismissal was in error because the state established that the delay was justified.
{¶ 18} "In reviewing a trial court's decision on a motion to dismiss for preindictment delay, we apply a de novo standard of review to the legal issues but afford great deference to findings of fact made by the trial judge." State v. Tate, 2016-Ohio-5622, 70 N.E.3d 1056, ¶ 18 (8th Dist.), citing State v. Smith , 8th Dist. Cuyahoga No. 100501, 2014-Ohio-3034, 2014 WL 3400677, ¶ 23.
{¶ 19} Preindictment delay violates due process only when it is unjustifiable and causes actual prejudice. State v. Jones , 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 12. The Ohio Supreme Court has established a burden-shifting framework for analyzing preindictment delay due process claims. State v. Whiting , 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998). Under this framework, a defendant is first required to present evidence of actual prejudice; if actual prejudice is established, the burden shifts to the state to produce evidence of a justifiable reason for the delay. Id.
{¶ 20} The Ohio Supreme Court has held that "the determination of 'actual prejudice' involves 'a delicate judgment based on the circumstances of each case.' " State v. Walls , 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52, citing United States v. Marion , 404 U.S. 307, 326, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The mere "possibility that memories will *797 fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice," as those are manifestations of the prejudice inherent in any delay. State v. Adams , 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 105, citing Marion at 326, 92 S.Ct. 455. An actual prejudice analysis requires courts to undertake a case-by-case consideration of the relevance of the lost evidence and its purported effect on the defense. Id. , citing Walls at ¶ 52.
{¶ 21} "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense." Jones at ¶ 28, citing State v. Luck , 15 Ohio St.3d 150, 157-158, 472 N.E.2d 1097 (1984). The Luck court found that the grounds set forth by the defense in that case-deaths of witnesses, the fading of memories, and the loss of evidence-"when balanced against the other admissible evidence" established that the defendant suffered actual prejudice. Luck at 157-158, 472 N.E.2d 1097.
{¶ 22} Here, the state argues that Kafantaris has not shown that he suffered actual prejudice as a result of the nearly 20-year delay in prosecution. Kafantaris argues that he suffered actual prejudice based on the loss of the original case file, the unavailability of any documents E.M. filed with the Attorney General's office seeking victim compensation, the unavailability of phone records that could have established E.M. was lying about the threatening phone calls, and his inability to interview witnesses who may have observed or interacted with Kafantaris or E.M. before or after the incident. Applying the burden-shifting analysis, we determine that Kafantaris would suffer actual prejudice were he required to stand trial today.
{¶ 23} We turn first to the loss of the original case file. All that remains of the original case file is a short incident report. The state has lost the original file, including the signed no-prosecution form. Kafantaris argues that he is prejudiced by the inability to refer to any notes regarding the detective's impression of the alleged victim, as well as notes describing investigative steps taken. Although the no-prosecution form is referenced in the incident report, the loss of the original form cannot be understated. Therefore, we cannot say that the loss of the case file-including the no-prosecution form-would not prejudice Kafantaris. This is especially true in light of the fact that the file was marked "exceptional cleanup," meaning that no further investigation was to take place. Even acknowledging the state's policy in which it declined to pursue rape cases without the cooperation of the victim, we find it possible that notes in the original case file could have minimized or eliminated the impact of the state's evidence.
{¶ 24} The same can be said for the now unavailable victim's advocate fund file. A program is available through the Ohio Attorney General by which alleged victims of crimes can be compensated for certain expenses. The program generally maintains a file for the alleged victim containing receipts, reports, and narratives provided by the individual applying for funds. Although we know that E.M. sought funds through this program, the Attorney General no longer has any files related to this incident. Therefore, statements made by E.M. shortly after the incident in 1996 are no longer available. Because E.M. ultimately told police that she felt partly responsible for the incident, it is possible that any additional statements she made could have been useful to the defense in impeaching her credibility.
*798 {¶ 25} We turn next to the unavailable phone records. The trial court's decision to dismiss this case was based largely on this court's decision in State v. Crymes , 8th Dist. Cuyahoga No. 104705, 2017-Ohio-2655, 2017 WL 1743873. In Crymes , the defendant argued that he was prejudiced by the unavailability of phone records where such records could have negatively impacted the alleged victim's credibility. The alleged victim in that case had told the police that she did not know why the defendant had come over to her house the morning of the alleged rape. The defendant, however, had told the police that the victim had called him twice early that morning and asked if he was coming over to her house. This court held that the defendant suffered actual prejudice because the phone records went directly to the victim's credibility. Specifically, the court found that the phone calls, "although not direct proof of consent, would help appellee verify his account of the event, thereby bolstering the defense." Crymes at ¶ 20.
{¶ 26} The state argues that in light of the factual differences between this case and Crymes , Kafantaris's success here would require this court to adopt a broad rule that, pursuant to Crymes , actual prejudice is established whenever phone records are unavailable in a case. We agree with the state that such a broad rule would distort the actual prejudice standard articulated by Ohio courts. We disagree, however, that such a broad rule is necessary for our decision here.
{¶ 27} The decision in Crymes was premised on the idea that in rape cases where consent is the only issue, the case often becomes a credibility contest between the accused and the accuser. Here, the defense theory of the case is based entirely on consent. Kafantaris argues that the victim's claim that he made four or five threatening phone calls to her after the alleged rape was at one point an eminently verifiable fact that, had he retained the ability to verify it, could have been disproven had he been able to secure phone records from the days following the incident. The fact that the phone records no longer exist mean that Kafantaris, like the defendant in Crymes , has lost the ability to fully cross-examine his accuser or impeach her credibility.
{¶ 28} We note that, like in Crymes , the content of the alleged phone calls is not material here. E.M. alleged that Kafantaris called her several times and threatened her. Kafantaris alleges that he never made these phone calls. Phone records could have served to help verify either E.M.'s or Kafantaris's version of the events and, similarly, potentially cast doubt on E.M.'s credibility in a way that certainly would have minimized the impact of the state's evidence.
{¶ 29} Kafantaris also argues that he and several potential witnesses in the matter have demonstrably faded memories. We are mindful that " 'a defendant's own general assertion that he does not remember details of an event that occurred nearly 20 years ago does not, in and of itself, constitute actual prejudice.' " State v. Hunter , 8th Dist., 2017-Ohio-4180, 92 N.E.3d 137, ¶ 18, citing State v. Smith , 8th Dist. Cuyahoga No. 100501, 2014-Ohio-3034, 2014 WL 3400677, ¶ 26 ; State v. Ricosky , 5th Dist. Stark No. 2003CA00174, 2004-Ohio-2091, 2004 WL 882477, ¶ 15. In analyzing the impact of Kafantaris's faded memory in this case, we again emphasize that the sole issue in the case is consent. As such, the defendant's own ability to clearly recall the events in question is of the utmost importance. A diminished memory, on its own, would likely not create actual prejudice, but we find that in this case, it is one of several forms of degradation *799 of potential evidence and testimony that amounts to actual prejudice to Kafantaris.
{¶ 30} Further, while a defendant is not required to articulate specifically what the testimony of a missing witness would have been, he is required to provide an explanation of what exculpatory testimony the witness might have offered. Jones, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 28, citing Adams , 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 103. Here, Kafantaris identifies several "potential" witnesses, including his brothers and employees of Club 1148, who might have interacted with him or E.M. the night of the incident. He states that observations of both his and E.M.'s demeanor was an important part of the defense's investigation in this case, but he does not explain how the testimony of these potential witnesses would have been exculpatory. Therefore, we find Kafantaris's assertion that the loss of "potential" witnesses would have created actual prejudice too speculative.
{¶ 31} We must note, though, that this case is distinct from preindictment delay cases in which the defendant was questioned, arrested, or otherwise apprehended as part of the initial investigation. It is also distinct from preindictment delay cases in which a "cold case" is ultimately reopened. Here, the state does not dispute that it had sufficient information to identify and locate Kafantaris in 1996. Nevertheless, that did not happen. In fact, Kafantaris's first indication that he had been accused of rape came nearly 20 years after the 1996 events, when the investigation was reopened. Under these circumstances, we cannot ignore the challenge Kafantaris faces in defending against charges stemming from an incident of which he initially had no independent recollection.
{¶ 32} Because we find that missing evidence, including the lost case file and unavailable phone records, would create actual prejudice were Kafantaris required to stand trial today, we move on to a discussion of whether the state has produced evidence of a justifiable reason for the delay in prosecution.
{¶ 33} Without attempting to explain its justification, the state asserts that the nearly 20-year delay was justified. A delay in the commencement of prosecution by the state would be found unjustified under one of two conditions: (1) when it is done in an attempt to gain a tactical advantage over the defendant, or (2) when the state "through negligence or error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased." Luck , 15 Ohio St.3d at 157-158, at 158, 472 N.E.2d 1097, citing Marion, 404 U.S. at 326, 92 S.Ct. 455, 30 L.Ed.2d 468. The state argues that neither condition applies here. We are not persuaded.
{¶ 34} Nothing in the record indicates that the delay was done in an attempt to gain a tactical advantage over the defendant. The record clearly shows that the state, through negligence or error in judgment, effectively ceased the active investigation of the case. Therefore, in order to justify the delayed prosecution, the state must be relying on new evidence. Critically, the state does not explicitly articulate that the delay is justified based on new evidence, as required. Instead, it asserts that the DNA results "add value" to the case by negating Kafantaris's ability to deny that the sexual conduct occurred at all. This is insufficient to justify the delay. It is clear from what remains of the original file that the state effectively ceased the investigation of this case in 1996, when it *800 obtained a no-prosecution form from the alleged victim and marked the file for "exceptional cleanup." At that time, the state was aware of Kafantaris's identity, as the alleged victim had provided police with his name, a physical description, and even information about his family. Similarly, the rape kit existed in 1996 and could have been tested. The state does not argue otherwise. Thus, an argument that there was no value in the DNA evidence in this case prior to 2016 is not persuasive. Therefore, the DNA evidence obtained in 2013 and 2016 does not constitute new evidence.
{¶ 35} In light of the foregoing, we affirm the trial court's decision to grant Kafantaris's motion to dismiss and the assignment of error is overruled.
PATRICIA ANN BLACKMON, J., and KATHLEEN ANN KEOUGH, J., CONCUR