[Cite as *State v. Willingham*, 2019-Ohio-1892.]
[Please see vacated opinion at 2019-Ohio-1211.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 106706 and 107033**

---

# STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

# CHRISTOPHER WILLINGHAM

DEFENDANT-APPELLEE

---

## JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-615669-A

**BEFORE:**  Kilbane, A.J., Boyle, J., and Headen, J.

**RELEASED AND JOURNALIZED:**  May 16, 2019

**ATTORNEYS FOR APPELLANT**

Michael C. O'Malley
Cuyahoga County Prosecutor
Daniel T. Van
Amy Venesile
Assistant County Prosecutors
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Mark A. Stanton
Cuyahoga County Public Defender
Paul Kuzmins
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113

ON RECONSIDERATION[1]

MARY EILEEN KILBANE, A.J.:

**{¶1}** Upon review, this court sua sponte reconsiders its decision in this case. After reconsideration, the opinion as announced by this court on March 28, 2019, *State v. Willingham*, 8th Dist. Cuyahoga Nos. 106706 and 107033, 2019-Ohio-1121, is hereby vacated and substituted with this opinion.

**{¶2}** In this consolidated appeal, plaintiff-appellant, the state of Ohio ("state"), appeals the trial court's decision dismissing the indictment against defendant-appellee, Christopher Willingham ("Willingham"), for preindictment delay. For the reasons set forth below, we affirm.

**{¶3}** On March 27, 2017, a grand jury returned a multicount indictment against Willingham involving two separate victims. Counts 1 and 2, charged Willingham with rape and kidnapping, with an offense date of November 15, 2000, and relating to victim D.R. Counts 3-8, charged him with five counts of rape and one count of kidnapping, with an offense date of August 2, 2008, and relating to victim S.B. The rape counts for both victims had sexually violent predator specifications attached, and the kidnapping counts for both victims had sexual motivation specifications attached.

---

[1] The original decision in this appeal, *State v. Willingham*, 8th Dist. Cuyahoga Nos. 106706 and 107033, 2019-Ohio-1121, released March 28, 2019, is hereby vacated. This opinion, issued upon sua sponte reconsideration, under App.R. 26(A), is the court's journalized decision in this appeal.

{¶4} On August 25, 2017, Willingham filed a motion for severance of the charges pertaining to each victim, which the trial court granted. On November 16, 2017, Willingham filed a motion to dismiss the indictment with prejudice based on unconstitutional preindictment delay. The trial court held a hearing on Willingham's motion.

{¶5} With regard to D.R., the state outlined that D.R. reported to police that in the early morning of November 15, 2000, a man, later identified by DNA as Willingham, approached her as she walked to her car. D.R. had just left the Gentle Persuasion Nightclub, where she worked as a dancer. According to D.R., Willingham asked if she needed someone to walk her to her car, but she declined. Willingham proceeded to grab D.R. by the shoulder and shoved her towards some bushes, where he vaginally raped her. He then fled on foot.

{¶6} After the encounter, D.R. returned to her apartment, spoke with her boyfriend, who advised her to contact the police. D.R. told the police that she did not recognize her attacker, but thought she would be able to identify him. D.R. then reported to the hospital, where a rape kit was completed.

{¶7} Fourteen years later, in November 2014, laboratory reports revealed that Willingham's DNA was in D.R.'s rape kit.

{¶8} Willingham maintains that he was a regular patron of the Gentle Persuasion Nightclub and remembers paying D.R. to have sex. According to

Willingham, on the day in question, he met D.R. at the club, talked about the arrangement, then D.R. drove him to the Red Carpet Inn on Northfield Road in Warrensville Heights, Ohio.

{¶9} Willingham maintains that when they checked in at the Red Carpet Inn, he paid for the room in cash, was given a receipt, and the front desk attendant photocopied his identification card. Willingham further maintains that he and D.R. proceeded to have consensual sex and then both went their separate ways.

{¶10} Willingham argued that as a result of the state's delay in pursuing the indictment he suffered prejudice in a number of ways including the following: (1) relevant business records from the Red Carpet Inn are no longer available, in particular the photocopy of his identification card, payment records, and surveillance video footage of the front desk, because Red Carpet Inn changed ownership and is now Econo Lodge; (2) the Gentle Persuasion Nightclub changed ownership, became Smoove Nightclub, which was subsequently completely destroyed by a fire, and therefore business records and surveillance videos are no longer available; (3) the defense investigator has been unable to get any response from the former owner of the Gentle Persuasion Nightclub; (4) the defense investigator has been unable to locate former employees of the Gentle Persuasion Nightclub, who could testify to business practices, such as walking the dancers to their cars after their shifts; (5) Cleveland Police Detective Essie Howard, the original lead investigator assigned to the case, passed away in 2007, and the case was

never reassigned; (6) D.R.'s memory has so faded that she was unable to pick him out of a photo array; D.R. no longer remembers details of the claimed attack; and D.R. now claims she was not an employee of the Gentle Persuasion Nightclub, but had so stated to avoid getting in trouble for underage drinking; (7) D.R.'s close friend, K.M., when interviewed after the indictment was returned, indicated that she and D.R. were inseparable in 2000, that they were most likely together on the night in question, and that she would have known if D.R. had been raped, but because of the passage of time, she can no longer recall details of the specific night; (8) the state has been given a preview of defense counsel's trial strategy, by virtue of the filing and the arguing of the motion to dismiss; and (9) Willingham, who has always maintained the encounter was consensual, has no choice but to waive his Fifth Amendment right and testify if the matter were to proceed to trial.

{¶11} With regard to S.B., the state outlined that on August 2, 2008, S.B. reported to police that she was raped by Willingham. According to S.B., she met Willingham on the internet, then met with him in person a few times in public, before inviting him to attend a friend's party. After the party, S.B. invited Willingham to her house. Once home, S.B. told Willingham she just wanted to sleep, he acquiesced and they went to bed fully clothed.

{¶12} According to S.B., Willingham began making sexual advances, but she indicated that she did not want to have sex. Eventually, S.B. gave Willingham a condom

and stated: "Go ahead, because I know you're going to do it anyway." During the encounter, Willingham began pinning down S.B., who asked him to stop, but Willingham continued and demanded that S.B. state the name of her boyfriend. S.B. stated the name of her boyfriend, Willingham stopped, removed the condom and urinated on S.B.'s face. Enraged, S.B. demanded that Willingham leave her home. Willingham apologized and left S.B.'s home. S.B. later called the police to report she had been raped and later presented at the hospital where a rape kit was completed.

{¶13} Willingham maintains S.B. consented. According to Willingham, S.B. invited him to spend the night at her home. They engaged in oral sex and Willingham watched as S.B. used sex toys to masturbate. S.B. then handed Willingham a condom and said she did not want to have unprotected sex. Willingham and S.B. had sex and then went to sleep.

{¶14} Later that morning, Willingham awoke and badly needed to urinate. Willingham, who was naked and sleeping on the bed against the wall, had to step over S.B. to get out of the bed. As Willingham was stepping over S.B., some urine leaked onto S.B., who became very angry and asked him to leave her house. Willingham left, then later called S.B. several times to apologize. S.B. answered one of these calls, and in one unanswered call, Willingham left an apologetic message on S.B.'s voicemail.

{¶15} At the hearing, it was established that during the investigation, Willingham voluntarily met with the police, waived his *Miranda* rights, made a statement, requested

and submitted to a polygraph test. The police determined the complaint was unsubstantiated and closed the file.

{¶16} Willingham argued that, as a result of the state's delay in pursuing the indictment, he has suffered prejudice in a number of ways including the following: (1) the record of the online communication between he and S.B. on blackplanet.com no longer exists; (2) the cell phone records of conversation between he and S.B. are no longer available because Verizon's retention policy is only seven years; (2) the apologetic voicemail message to S.B. that she turned over to investigators in 2008 is now lost; (3) the raw data from a polygraph test he took was now missing; (4) Cleveland Police Detective Orr, a financial crimes investigator, who made two or three telephone calls to Cleveland Police Detective Lessman in 2008, no longer recalls anything about the case or why he called Detective Lessman; and (5) that S.B. no longer recalls the details of their interaction.

{¶17} At the conclusion of the hearing, the trial court instructed the parties to submit supplemental briefing. On December 28, 2017, the trial court granted the motion on Counts 1 and 2 pertaining to D.R. On March 1, 2018, the trial court held a subsequent hearing, after which it issued an order dismissing Counts 3-8 pertaining to S.B.

{¶18} The state now appeals, assigning the following sole error for review:

Assignment of Error One

The trial court erred in dismissing the indictment where [Willingham] failed to demonstrate that he suffered actual prejudice based on preindictment delay and where the delay was justified.

{¶19} The state argues the trial court erred in dismissing the indictment on the basis of preindictment delay.

{¶20} In reviewing a trial court's decision on a motion to dismiss for preindictment delay, this court applies a de novo standard of review to the legal issues, but we afford great deference to the findings of fact made by the trial judge. *State v. Walker*, 8th Dist. Cuyahoga No. 106414, 2018-Ohio-3669.

{¶21} The statute of limitations for a criminal offense is the defendant's primary protection against overly stale criminal charges. *U.S. v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). However, the Due Process Clause of the Fifth Amendment provides additional protection in cases where the preindictment delay was unjustifiable and caused actual prejudice. *U.S. v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

{¶22} In *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, the Ohio Supreme Court established a burden-shifting framework for analyzing a due process claim based on preindictment delay. *Id.* at ¶ 13. Under this framework, the defendant bears the initial burden of presenting evidence of actual prejudice. *Id.* "Once a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay." *Id.* at ¶ 13, citing *State v. Whiting*, 84 Ohio

St.3d 215, 217, 1998-Ohio-575, 702 N.E.2d 1199; *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127. Therefore, if the defendant fails to establish actual prejudice, the court is not required to consider the reasons for the delay. *Adams* at ¶ 107.

**{¶23}** "A court must 'consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay.'" *Id.*, quoting *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52. A claim of actual prejudice should be scrutinized "vis-à-vis the particular evidence that was lost or unavailable as a result of the delay" and "the relevance of the lost evidence and its purported effect on the defense." *Id.*

**{¶24}** We note that "[t]he 'possibility that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice.'" *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127 at ¶ 105. "Those are 'the real possibilit[ies] of prejudice inherent in any extended delay,' and statutes of limitations sufficiently protect against them." *Id.*, quoting *Marion*, 404 U.S. at 326, 92 S.Ct. 455, 30 L.Ed.2d 468. "That does not mean, however, that demonstrably faded memories and actually unavailable witnesses or lost evidence cannot satisfy the actual-prejudice requirement." *Id.*

**{¶25}** In *Jones*, the court explained that even when a defendant does not know what the exact substance of an unavailable witness's testimony would have been, actual prejudice may still be shown where missing evidence or unavailable testimony, identified

by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense. *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 28, citing *State v. Luck*, 15 Ohio St.3d 150, 157, 472 N.E.2d 1097 (1984).

**{¶26}** Based on *Jones*, a defendant is not required to establish "precisely" what an unavailable witness would have testified to at trial and that the testimony would have been directly exculpatory. *Id*. at ¶ 27. However, a defendant cannot rely upon broad assertions of missing evidence or an unavailable witness to establish prejudice. A defendant must demonstrate a viable, tangible connection between the missing evidence or the unavailable witness to the defense of the case. *State v. Richardson*, 2016-Ohio-5843, 70 N.E.3d 1175 (8th Dist.). The due process requirement of actual prejudice may be shown upon "the proven unavailability of specific evidence or testimony that would attack the credibility or weight of the state's evidence against a defendant, and thereby aid in establishing a defense." *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 25.

**{¶27}** Once a defendant has established actual prejudice, the state must produce evidence of a justifiable reason for delay in the commencement of prosecution. *State v. Hunter*, 8th Dist. Cuyahoga No. 104789, 2017-Ohio-4180, citing *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829 at ¶ 51. A delay can be found to be unjustifiable when the state's reason for the delay is to intentionally gain a tactical advantage over the

defendant, *see Marion*, 404 U.S. at 324, 92 S.Ct. 455, 30 L.Ed.2d 468, or when the state, through negligence or error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased. *Luck*, 15 Ohio St.3d 158, 472 N.E.2d 1097. The length of delay will typically be the "key" in determining whether a delay caused by the state's negligence or error in judgment is justifiable. *Id.* Thereafter, the due process inquiry involves a balancing test by the court, weighing the reasons for the delay against the prejudice to the defendant, in light of the length of the delay. *Id.* at 154.

{¶28} Here, the state argues Willingham failed to present evidence of actual prejudice. After independently reviewing the record, however, we find that Willingham has suffered actual prejudice as a result of the cumulative impact of the loss evidence occasioned by the lengthy delays.

{¶29} In the matter regarding D.R., Willingham claims prejudice due to the unavailability of hotel records, which included a photograph of his identification card taken at the time of check in, and surveillance video footage of the hotel's front desk.

{¶30} The state argues Willingham would not have been able to obtain the records because the Red Carpet Inn was acquired by Econo Lodge in 2001, a year after D.R. reported she had been raped. The state further argues that even if Willingham had been identified as the suspect in 2004, when he was convicted of an unrelated felony and when,

under Ohio's DNA Statute, a DNA specimen would have been collected from Willingham, he still would have been unable to obtain the records. Thus, the state argues, Willingham's claimed prejudice is speculative.

{¶31} However, because the possibility exists, despite the hotel being acquired in 2001, that Willingham would have had a greater chance of obtaining the records prior to and at least by 2004, than he would the longer the case lay dormant, we decline to characterize the impact occasioned by the loss or unavailability of these records as speculative. The now unavailable hotel records would have been relevant to refute D.R.'s claim that Willingham raped her in the bushes by the Gentle Persuasion Nightclub.

{¶32} These hotel records and the unavailable footage of the front desk, depicting parties as they checked into the hotel, would have been relevant to support Willingham's claim that the encounter was consensual. The unavailability of these records is tantamount to erasing Willingham's alibi. As a result, we find Willingham has suffered actual prejudice because of the delay.

{¶33} We also find that the change in ownership of the Gentle Persuasion Nightclub, its ultimate destruction by fire, the unavailability of the previous owner, and the inability to locate any previous employees of the nightclub has prejudiced Willingham. Testimony from the previous owner and former employees would have been relevant to describing standard operating procedures, such as whether their hired dancers would walk unaccompanied to their vehicles after the nightclub closed.

**{¶34}** While a defendant is not required to articulate specifically what the testimony of a missing witness would have been, he is required to provide an explanation of what exculpatory testimony the witness might have offered. *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 28, citing *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 103.

**{¶35}** Here, Willingham expected the unavailable witnesses to testify that the hired dancers did not walk unaccompanied to their vehicles after work. This kind of testimony would undermine the state's case that D.R. was raped as she walked to her car after work and would bolster Willingham's defense. Testimony from these witnesses could also serve to challenge D.R.'s version of the events. D.R. claimed at the time she made the report, that she was an employee of the nightclub, but 17 years later now claims she was only a patron.

**{¶36}** The state counters that the previous nightclub owner is not unavailable, just not responding; thus, Willingham is not prejudiced. Although the burden remains on Willingham to prove actual prejudice resulting from an unavailable witness, the state should remain mindful, that as a servant of the law, it has as much an interest in getting the previous owner to respond as Willingham does, so ultimately guilt does not escape and innocence suffer.

**{¶37}** In addition, we find that Willingham has been prejudiced by the 2007 passing of the original investigator, Detective Howard, and the case never being

reassigned. It was established that Detective Howard spoke with D.R. five days after the reported rape. However, there are no notes regarding the contents of their conversation; nothing regarding the detective's impression of D.R. The only notation regarding Detective Howard's interaction with D.R. is a single handwritten note on the police report stating: "11/20/00 [D.R.] called - will come in to look at photos."

{¶38} The present situation, involving a scant case file, can be compared to the matter of the lost case file in *State v. Kafantaris*, 8th Dist. Cuyahoga No. 105937, 2018-Ohio-1397. There, we stated:

> We turn first to the loss of the original case file. All that remains of the original case file is a short incident report. The state has lost the original file * * *. Kafantaris argues that he is prejudiced by the inability to refer to any notes regarding the detective's impression of the alleged victim, as well as notes describing investigative steps taken. Although the no-prosecution form is referenced in the incident report, the loss of the original form cannot be understated. Therefore, we cannot say that the loss of the case file * * * would not prejudice Kafantaris.

*Id.* at ¶ 23.

{¶39} Furthermore, there are no pictures in the case file. No pictures of the nightclub, the parking lot, nearby bushes, or of the general surroundings. Pictures would have been critical, especially since it has been established that where the nightclub once stood, is now a barren wasteland.

{¶40} Willingham is further prejudiced by D.R.'s fading memory, as well as the fading memory of her friend K.M. Although identity is not an issue, it was established that with the 17-year passage of time, D.R. was unable to pick Willingham out of a photo

array. In addition, after 17 years, D.R. no longer remembers details of the reported attack. K.M., who indicated that she and D.R. were inseparable in 2000, that she would most likely have been with D.R. on the night in question, and that she would have known if D.R. had been raped, can no longer recall the details of that night because of the passage of time.

{¶41} After independently considering the evidence as it exists when this indictment was filed, we find that Willingham has been prejudiced by the 17-year delay. Having determined that the loss and unavailability of the evidence previously discussed would create actual prejudice were Willingham to stand trial today, we now turn our attention to whether the state produced evidence of justifiable reason for delay.

{¶42} The state argues Willingham's identity was unknown until the testing of the rape kit. We are not persuaded.

{¶43} Recently, in *State v. Jenkins*, 8th Dist. Cuyahoga No. 105226, 2018-Ohio-483, while addressing a similar issue, we stated:

> Additionally, although a witness testified at trial that the police department did not conduct DNA testing in 1994, this fact alone does not render the DNA evidence "new." DNA testing was available in 1994, and the state does not point to any reason the police department would have been unable to send the evidence to a third party for testing. Even if that were not a feasible option for the department at the time, the state's own witness testified that the department began doing DNA testing in 1999 or 2000. If this is accurate, the state would still be unable to justify the 14- to 15-year delay in prosecution.

*Id.* at *¶* 43.

**{¶44}** As previously noted, Willingham was convicted of an unrelated felony in 2004 and under Ohio's DNA Statute, a DNA specimen would have been collected from Willingham. At the hearing on Willingham's motion, the following exchange took place between the defense attorney and Detective Lessman:

> [ATTORNEY]: We're talking in 2000, if somebody would have * * * processed a rape kit, got a DNA profile from it, they would enter it into CODIS to see if there was a return on it for a named suspect, correct?
>
> [LESSMAN]: That's correct.
>
> [ATTORNEY]: If that named suspect is not in the database at that time, that profile would still stay in CODIS; is that correct?
>
> [LESSMAN]: That is correct.
>
> [ATTORNEY]: Then if a named suspect was entered into that profile in the database with that same profile, it would automatically generate a hit, correct?
>
> [LESSMAN]: That is correct.

**{¶45}** It is clear from the above exchange that Willingham could have been identified as early as 2004, if the rape kit had been tested. Thus, whether through negligence or error in judgment, the police ceased to actively investigate the case, which is not a justifiable reason for delay. After having independently engaged in the burden-shifting analysis, we affirm the decision of the trial court dismissing Counts 1 and 2 of the indictment and now turn our attention to the matter involving S.B.

{¶46} In the matter of S.B., the state also argues that Willingham failed to present evidence of actual prejudice. Again, after independently reviewing the record, we find that Willingham has suffered actual prejudice because of the delay.

{¶47} At the outset, we note, unlike in the matter of D.R. above, Willingham's identity as the assailant was always known to law enforcement. Willingham's identity was known on the day S.B. reported she was raped. Willingham immediately indicated the encounter was consensual and proceeded to cooperate with law enforcement.

{¶48} After an investigation, the Cleveland Police Department chose not proceed with the case. The record indicates the matter was disposed of with "[n]o papers issued" because of "[i]nsufficient evidence." The matter was not presented to a grand jury and, in closing the case, the police department labeled it an "[u]nfounded [c]omplaint."

{¶49} Then in 2017, which was almost a decade after S.B. reported being raped, the state proceeded to indict Willingham on the basis of the tested rape kit. At the time of the indictment, the state had no more information than it did in 2008, when the police department labeled the case an "unfounded complaint."

{¶50} Now, Willingham no longer has access to the online communication between he and S.B. on blackplanet.com, no longer has the Verizon cellphone records between he and S.B., and no longer has access to an apologetic voicemail message he left for S.B., who turned it over to investigators. The state stipulated that the voicemail had

been lost or destroyed. Importantly, the state admitted that the lost or destroyed voicemail message was most damaging to its own case.

{¶51} It is clear that at the time of the indictment in 2017, the state possessed the same information it had in 2008, when it chose not to seek an indictment. Indeed, the police department determined it was an "unfounded complaint." With the loss of the crucial pieces of evidence discussed above, Willingham is now at a disadvantage and unable to mount a meaningful defense.

{¶52} One of the pivotal pieces of evidence, the apologetic voicemail message, which is now missing and admittedly damaging to the state's case, was in the possession of law enforcement when it was lost or destroyed. Prejudice may be established where the defendant contends that the delay resulted in the loss of witness testimony, lost memory, or spoiled or destroyed evidence. *State v. Mack*, 8th Dist. Cuyahoga No. 100965, 2014-Ohio-4817, citing *State v. Doksa*, 113 Ohio App.3d 277, 281, 680 N.E.2d 1043 (8th Dist.1996).

{¶53} Based on the foregoing, we find that Willingham would suffer actual prejudice if he were to stand trial at this juncture. We now turn our attention to whether the state produced evidence to justify the delay.

{¶54} Here, laboring on the belief that Willingham has not satisfied its burden of showing actual prejudice, the state argues it has no burden to justify the preindictment

delay. Alternatively, the state argues that in the event we find actual prejudice, its delay resulted from the caution it must exercise before indicting an individual.

**{¶55}** The state's reason, however, would be more readily accepted, if not for the fact it has no new evidence. As previously stated, the state has nothing it did not already have in 2008, when it chose not to indict Willingham. Willingham's identity has always been known, and the eventual testing of the rape kit did not provide any further illumination. Where the state effectively ceased the active investigation of a case, but later decides to commence prosecution upon essentially the same evidence that was available to it at the time that its active investigation was ceased, it is unjustified. *State v. Dixon*, 8th Dist. Cuyahoga No. 102335, 2015-Ohio-3144, citing *Luck*, 15 Ohio St.3d at 159, 472 N.E.2d 1097.

**{¶56}** As a result, we find the trial court properly dismissed Counts 3-8 of the indictment.

**{¶57}** Accordingly, we overrule the sole assignment of error.

**{¶58}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____

MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., and
RAYMOND C. HEADEN, J., CONCUR