[Cite as *State vs. Bourn*, 2019-Ohio-2327.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

    Plaintiff-Appellant,           :

                     No. 107525

    v.                              :

MELVIN BOURN,                              :

    Defendant-Appellee.            :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 13, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-618413-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Oscar Albores and Daniel T. Van, Assistant Prosecuting Attorneys, *for appellant.*

Mark A. Stanton, Chief Public Defender, Robert Blanshard McCaleb, Assistant Public Defender, *for appellee.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Plaintiff-appellant, state of Ohio appeals the trial court's decision to grant a motion to dismiss rape charges against defendant-appellee, Melvin Bourn ("Bourn"), for preindictment delay. We affirm the trial court's decision.

## I.    Facts and Procedural History

{¶ 2}    Bourn was indicted on June 19, 2017, on an eight-count indictment for committing two separate rapes on January 14, 2005, and April 13, 2005. On December 9, 2017, Bourn filed a motion to dismiss the charges due to prejudicial preindictment delay. A hearing was held, and the trial court dismissed the four counts of rape for the January 14, 2005 incident, but denied Bourn's motion for the April 13, 2005 incident. Bourn then filed a motion for reconsideration, and the trial court granted Bourn's motion to dismiss the remaining charges. The state is now appealing the trial court's decision to dismiss the charges from the April 13, 2005 incident.

### A.    Appellant's Claims

{¶ 3}    The state claims that on April 13, 2005, Bourn raped N.J. On this day, N.J. and Bourn were having drinks at a neighborhood bar across the street from her home. N.J. noticed Bourn staring at her. She decided to leave the bar for home because she was not feeling well. N.J. walked across the street to her home, entered, and locked the door. Later, N.J.'s friend Erika Young ("Young") came to N.J.'s home to check on her. When Young opened the front door, she observed Bourn engaging in anal sex with N.J., who appeared to be unresponsive. Young waited outside on the porch for Bourn to exit, and when he did, they engaged in a verbal exchange.

{¶ 4}    Later that morning, when N.J. awoke her "butt was hurting real bad." Young asked N.J. why the man from the bar was in her home. Young told N.J. what she witnessed a few hours before. N.J. called Joseph Gay ("Gay"), her boyfriend at

the time, and asked him to come to her home. Gay arrived at the home and told N.J. that he attempted to have sex with her, but because she was unresponsive, he stopped. N.J. then called EMS and went to the hospital to be examined. A rape kit was performed on N.J.

{¶ 5} After N.J. returned home, Young, Gay, and two other individuals were with her in the house when a man came to the door. Young identified the man at the door as Bourn, the man she saw having sex with N.J. while she was unresponsive. Gay and Bourn got into a verbal altercation, and Bourn pulled out a gun. Gay tried to get the gun away from Bourn, and the gun went off three times. The bullet struck Gay in the hand, and Bourn ran away.

{¶ 6} Six years later, in the spring of 2011, the Cleveland Police Department ("CPD") started an initiative to forward its backlogged rape kits to BCI for DNA testing. On April 19, 2013, N.J.'s rape kit was submitted to BCI. The DNA from N.J.'s rape kit was found to be a match to Bourn in May 2015. Bourn was subsequently indicted on four counts surrounding the events that occurred on April 13, 2005.

## B. Appellee's Claims

{¶ 7} Bourn claims that prior to April 13, 2005, he met N.J. on the street and they exchanged phone numbers. On April 13, 2005, Bourn called N.J. and she invited him to a bar. Bourn claims that he abstains from alcohol so they agreed to meet at her home. Bourn arrived at N.J.'s home, and they had consensual sex in N.J.'s living room. Bourn remembers being interrupted by Young, but after she left,

Bourn and N.J. finished. Bourn left N.J.'s home, promising to call soon. Later that morning, Bourn called N.J. a few times and she invited him back to her home. When Bourn arrived, Bourn claims that Gay attacked him and he left N.J.'s home, and never contacted her again.

{¶ 8} According to Bourn, the state tested the rape kit in May 2015, and the results were confirmed in 2017 that the DNA matched Bourn's, whose DNA was in the government's CODIS system since 2002 due to a prior conviction.

### C. Trial Court's Decision

{¶ 9} The trial court, in its ruling on Bourn's reconsideration motion to dismiss for preindictment delay, used *State v. Kafantaris*, 2018-Ohio-1397, 110 N.E.3d 793 (8th Dist.), as its reason for granting Bourn's motion. The trial court stated, "based on the holding by the Court of Appeals in *Kafantaris* and the almost identical facts in this case, the court must follow the precedent and dismiss the remaining counts against Bourn for preindictment delay." Journal entry No. 104541157 (July 10, 2018).

{¶ 10} The trial court reasoned that much of the evidence is no longer available, like in *Kafantaris*. Also, the trial court stated,

> The confirmation of the DNA match occurred May 5, 2017, twelve years after the alleged crimes. Bourn had [a] prior conviction in 2002 for gross sexual imposition for which he was incarcerated. His DNA was apparently already in the CODIS system since that is how his identity was matched from the rape kit. His identity could have been discovered quickly and easily had the testing of the rape kit not languished for twelve years.

At the time of the first hearing on this issue, the court was not presented with the *Kafantaris* case, which is nearly on all fours with this case. *Kafantaris*, which granted a motion to dismiss for preindictment delay, was based on the facts that the nightclub where the victim met Kafantaris was no longer in existence, the rape kit was not tested for 20 years, the original investigation file was lost, the phone records were unavailable, and the state had sufficient information in 1996 to identify and locate Kafantaris.

Here, the nightclub is gone, the original file is gone, the officer handling the file, Officer Moore, has passed away, the rape kit was not tested for 12 years, the phone records are unavailable, and the state had sufficient information in 2005 to identify and locate Bourn.

{¶ 11} The trial court determined that facts in Bourn's case were "strikingly similar" to the facts in *Kafantaris*; the trial court therefore, granted Bourn's motion to dismiss. As a result, the state filed this appeal, and assigned one error for our review:

I.  The trial court erred when it granted the motion to dismiss for preindictment delay on the basis that the defense had demonstrated prejudice for Jane Doe 2's case.

## II.  Preindictment Delay

### A.  Standard of Review

{¶ 12} "In reviewing a trial court's decision on a motion to dismiss for preindictment delay, we apply a de novo standard of review to the legal issues but afford great deference to findings of fact made by the trial judge." *State v. Tate*, 2016-Ohio-5622, 70 N.E.3d 1056, ¶ 18 (8th Dist.), citing *State v. Smith*, 8th Dist. Cuyahoga No. 100501, 2014-Ohio-3034, ¶ 23.

**B. Did the Trial Court Err when it Granted the Motion for Preindictment Delay When it was Clear that the Defense had Not Demonstrated Actual Prejudice?**

{¶ 13} The state argues in its sole assignment of error that Bourn cannot demonstrate actual prejudice as a result of preindictment delay. The state also argues that Bourn has failed to demonstrate any concrete proof of lost exculpatory evidence prejudicing his ability to defend his case.

> Preindictment delay violates due process only when it is unjustifiable and causes actual prejudice. *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 12. The Ohio Supreme Court has established a burden-shifting framework for analyzing preindictment delay due process claims. *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998). Under this framework, a defendant is first required to present evidence of actual prejudice; if actual prejudice is established, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *Id.*

> The Ohio Supreme Court has held that "the determination of 'actual prejudice' involves 'a delicate judgment based on the circumstances of each case.'" *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52, citing *United States v. Marion*, 404 U.S. 307, 326, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The mere "possibility that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice," as those are manifestations of the prejudice inherent in any delay. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 105, citing *Marion* at 326. An actual prejudice analysis requires courts to undertake a case-by-case consideration of the relevance of the lost evidence and its purported effect on the defense. *Id.*, citing *Walls* at ¶ 52.

> "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense." *Jones* at ¶ 28, citing *State v. Luck*, 15 Ohio St.3d 150, 157-158, 472 N.E.2d 1097 (1984). The *Luck* court found that the grounds set forth by the defense in that case — deaths of witnesses, the fading of memories, and the loss of evidence — "when balanced

against the other admissible evidence" established that the defendant suffered actual prejudice. *Luck* at 157-158.

*Kafantaris*, 2018-Ohio-1397, 110 N.E.3d 793, at ¶ 19-21.

{¶ 14} Bourn states that he demonstrated actual prejudice regarding his right to a fair trial. He specifically points to the phone records that would have bolstered his claims that there were numerous phone calls and conversations between him and N.J., and that they spoke on the phone after the alleged rape. At the time, Bourn's phone carrier was Revol, and since this incident, Revol has gone out of business. In *Kafantaris*, we stated,

> [t]he trial court's decision to dismiss this case was based largely on this court's decision in *State v. Crymes*, 8th Dist. Cuyahoga No. 104705, 2017-Ohio-2655. In *Crymes*, the defendant argued that he was prejudiced by the unavailability of phone records where such records could have negatively impacted the alleged victim's credibility. * * * This court held that the defendant suffered actual prejudice because the phone records went directly to the victim's credibility. Specifically, the court found that the phone calls, "although not direct proof of consent, would help appellee verify his account of the event, thereby bolstering the defense." *Crymes* at ¶ 20.

*Kafantaris* at ¶ 25.

{¶ 15} Similar to the facts in *Kafantaris,* the original investigative file is missing. In *Kafantaris,* we stated, "we find it possible that notes in the original case file could have minimized or eliminated the impact of the state's evidence." *Id.* at ¶ 23. Also, the bar where N.J. claimed to have met Bourn is no longer in business. Bourn claims that he never went to the bar because he does not drink alcohol. Like the trial court, considering all of these factors, we find that Bourn has demonstrated

actual prejudice, and now the burden shifts to the state to produce evidence to justify the delay. *Id.* at ¶ 19.

{¶ 16} The state argues that the delay was justifiable because it must move cautiously before indicting an individual. We reject the state's reasoning. In 2011, CPD began to forward its backlog of rape kits to the state. This is six years after the alleged rape took place. N.J.'s rape kit did not get submitted until 2013, eight years after the alleged rape. In 2015, the DNA from N.J.'s rape kit was matched with Bourn, and two years later, in 2017, the state was notified of the match. It is also noted that the state had Bourn's DNA on file since 2002. The evidence reveals that had the rape kit been tested in 2005 or shortly thereafter, a DNA match would have been made sooner. We find that the same DNA evidence was available to the state at the time of the active investigation that was available 12 years later.

{¶ 17} [A] delay can be found to be unjustifiable when

> "the state's reason for the delay is to intentionally gain a tactical advantage over the defendant, *see United States v. Marion*, [404 U.S. at 324, 92 S.Ct. 455, 30 L.Ed.2d 468], or when the state, through negligence o[r] error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased."

*State v. Powell*, 2016-Ohio-1220, 61 N.E.3d 789, ¶ 14 (8th Dist.), citing *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097.

{¶ 18} In *Kafantaris,* we stated, "[s]imilarly, the rape kit existed in 1996 and could have been tested. The state does not argue otherwise. Thus, an argument that there was no value in the DNA evidence in this case prior to 2016 is not persuasive.

Therefore, the DNA evidence obtained in 2013 and 2016 does not constitute new evidence." *Kafantaris*, 2018-Ohio-1397, 110 N.E.3d 793, at ¶ 34. We find that the state's argument in this case is not persuasive. In light of our holding in *Kafantaris*, we affirm the trial court's decision to dismiss the case based on prejudicial preindictment delay.

{¶ 19} The state's sole assignment of error is overruled.

{¶ 20} Judgment is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
RAYMOND C. HEADEN, J., CONCUR