[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bourn*, Slip Opinion No. 2022-Ohio-4321.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4321

THE STATE OF OHIO, APPELLANT, *v*. BOURN, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bourn*, Slip Opinion No. 2022-Ohio-4321.]**

*Criminal law—Preindictment delay—A defendant must provide evidence of actual prejudice to move forward on a claim of preindictment delay—Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense.*

(No. 2019-1298—Submitted October 26, 2021—Decided December 6, 2022.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 107525, 2019-Ohio-2327.

_____

**FISCHER, J., announcing the judgment of the court.**

{¶ 1} In this case, we are once again asked to consider what a defendant must show to demonstrate actual prejudice when alleging unconstitutional preindictment delay in a rape case in which consent is at issue.  We reverse the

judgment of the court of appeals. The analysis set forth in *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, is controlling. In determining whether unconstitutional preindictment delay has occurred, the relevant inquiry is whether the defendant has shown "actual prejudice."

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} This case stems from a claim of rape that was reported to have occurred in 2005. Appellant, the state, alleges that the events in question unfolded as follows: In April 2005, the alleged victim, N.J., noticed an unknown man, whom the state believes to have been appellee, Melvin Bourn, staring at her while she was at a bar. N.J. said she was not feeling well later in the evening, so she left the bar, walked across the street to her home, went inside, and locked the door. That evening, N.J.'s friend allegedly went to N.J.'s home to check on N.J. Upon opening the front door, the friend allegedly saw an unknown man engaging in sex with an unresponsive N.J. The next day, N.J. went to the hospital to be examined, and evidence was collected for a rape kit. After she had returned to the house, Bourn came over. The state claimed that Bourn and N.J.'s boyfriend got into an argument and that Bourn fired a gun and the boyfriend was hit.

{¶ 3} Bourn asserts that he had met N.J. prior to the evening in question and that they had exchanged phone numbers. Bourn alleges that when he called N.J. on the day in question, N.J. invited him to meet at her house after he got off work. He also alleges that N.J. let him into her house and "one thing lead to another." While they were engaged in consensual sex, they were interrupted by N.J.'s friend who opened the door, looked, and immediately closed the door. Bourn maintains that he and N.J. continued to have sex after the disruption. When Bourn left, he saw N.J.'s friend on the front porch and briefly conversed with her before heading home. According to Bourn, he called N.J. the day after they engaged in sex and she invited him back to her home. He alleges that upon arriving at the home, N.J.'s boyfriend attacked him. Bourn then left, deciding to never contact N.J. again.

{¶ 4} The state alleges that because of a backlog, a number of rape kits were submitted to the Bureau of Criminal Investigation ("BCI") for testing in 2011. BCI issued a report in 2017 linking evidence from N.J.'s rape kit to Bourn.

{¶ 5} In 2017, Bourn was indicted in a multiple-count indictment that included allegations that Bourn had raped N.J. in 2005. Bourn filed a motion to dismiss the charges due to prejudicial preindictment delay.

{¶ 6} After a hearing, the trial court denied the motion as to the alleged rape of N.J. Bourn then filed a motion to reconsider. In its ruling on reconsideration, the trial court stated that Bourn had clarified the issues forming the basis for his motion to dismiss and had presented the court with two on-point decisions of the Eighth District Court of Appeals. The trial court found that the bar where N.J. allegedly had seen Bourn was gone, the original police file was gone, the officer handling that file was deceased, Bourn's phone records were unavailable, the evidence in the rape kit went untested for 12 years, and the state had sufficient information in 2005 to identify and locate Bourn. The court granted Bourn's motion to reconsider and dismissed the charges.

{¶ 7} The Eighth District affirmed the trial court's decision. The court of appeals concluded that Bourn had demonstrated actual prejudice. In reaching that conclusion, the court stated that Bourn had alleged that phone records would have bolstered his claim that he and N.J had numerous conversations. It further noted that the case file might have contained notes that could have minimized or eliminated the impact of the state's evidence, that the bar was no longer in business, and that Bourn claimed he never went to the bar.

{¶ 8} We accepted jurisdiction over the proposition of law set forth in the state's appeal:

> In a sexual assault case, a defendant does not establish actual prejudice, for purposes of a claim of pre-indictment delay analysis,

through the loss of any evidence that might bolster a consent defense. At a minimum, there must be a reliable indication that such evidence existed and could have been obtained, is non-speculative, and that such evidence was material and substantively probative on the issue of consent.

*See* 157 Ohio St.3d 1510, 2019-Ohio-5193, 136 N.E.3d 499. We also held this case for our decision in case Nos. 2019-0659 and 2019-0090, *State v. Willingham*. After *Willingham* was dismissed as improvidently accepted, 160 Ohio St.3d 346, 2020-Ohio-3475, 156 N.E.3d 903, we lifted the stay in this case and ordered briefing. 160 Ohio St.3d 1446, 2020-Ohio-5165, 156 N.E.3d 910.

## II. ANALYSIS

{¶ 9} In support of its proposition of law, the state argues that the Eighth District's decision continues a trend of reducing a defendant's burden in preindictment-delay cases. It asserts that the appellate court's approach enables defendants to establish actual prejudice by simply making speculative claims. It accordingly asks this court to hold that a defendant must provide concrete proof of actual and substantial prejudice.

{¶ 10} Bourn responds that the state's proposed test is significantly more restrictive than the current test rooted in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. He argues that the state has not demonstrated the need for this court to set forth a new test, and he asserts that under the existing test, the Eighth District correctly concluded that the preindictment delay in this case was unconstitutional because it violated his right to due process.

A. *A defendant must provide evidence of actual prejudice to move forward on a claim of preindictment delay*

{¶ 11} "[P]reindictment delay violates due process only when it is unjustifiable and causes actual prejudice." *Jones*, 148 Ohio St.3d 167, 2016-Ohio-

4

5105, 69 N.E.3d 688, at ¶ 12. This court has "firmly established a burden-shifting framework for analyzing a due-process claim based on preindictment delay." *Id.* at ¶ 13. Pursuant to that framework, a defendant first bears the burden of presenting evidence that the preindictment delay caused actual prejudice. *Id.*, citing *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998), and *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 99. After the defendant has provided evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *Id.*, citing *Whiting* and *Adams*.

{¶ 12} The *Jones* court explained that the actual-prejudice determination is inherently dependent on the particular facts of each case: "A determination of actual prejudice involves ' "a delicate judgment' " and a case-by-case consideration of the particular circumstances." *Id.* at ¶ 20, quoting *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52, quoting *United States v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In *Jones*, this court rejected both a defendant-friendly standard that requires applying "amorphous" concepts of "fundamental justice" to prove actual prejudice and a prosecutor-friendly standard that requires "the loss of evidence with demonstrably exculpatory value that goes beyond attacking the credibility of the state's evidence." *Id.* at ¶ 23.

{¶ 13} In *Jones*, this court declined to hold that a claim of actual prejudice based on the death of a potential witness was too speculative to succeed unless a defendant could establish precisely what the witness would have testified to or that the testimony of that witness would have been directly exculpatory. *Id.* at ¶ 27. The court clarified that "the proven unavailability of specific evidence or testimony that would attack the credibility or weight of the state's evidence against a defendant and thereby aid in establishing a defense may satisfy the due-process requirement of actual prejudice." *Id.* at ¶ 25.

{¶ 14} Near the conclusion of its analysis in *Jones*, the court succinctly stated its key holding: "Actual prejudice exists when missing evidence or

unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense." *Id.*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 28, citing *State v. Luck*, 15 Ohio St.3d 150, 157-158, 472 N.E.2d 1097 (1984).

{¶ 15} The state urges us to hold that a defendant must establish actual prejudice by providing concrete proof of "substantial prejudice." In its brief, the state does not engage in any in-depth discussion of the source of the requirement for "substantial prejudice." This court, however, has referred to a substantial-prejudice requirement in the past. In *Whiting*, 84 Ohio St.3d at 217, 702 N.E.2d 1199, for instance, this court stated that "where a defendant moves to dismiss an indictment and presents evidence establishing substantial prejudice resulting from preindictment delay, the state bears the burden of producing evidence of a justifiable reason for the delay." In *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 51, this court stated that "[t]o warrant dismissal on the basis of preindictment delay, a defendant must present evidence establishing substantial prejudice." And in *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 99, this court cited *Whiting* and *Walls*, stating that "[w]e have held that if the defendant makes a preliminary showing of substantial prejudice, then the burden shifts to the state to present evidence of a justifiable reason for the delay."

{¶ 16} These decisions seem to treat "actual prejudice" and "substantial prejudice" synonymously and may have generated some confusion. To eliminate any potential for confusion, courts must apply the actual-prejudice standard approved by the United States Supreme Court in *Marion* and by this court in *Luck* and *Jones*.

{¶ 17} *Jones* clearly explains what constitutes "actual prejudice" and accordingly obviates the need for any new test: "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and

bolster the defense." 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 28. The use of the word "would" in the *Jones* decision is significant. It is not enough for a defendant to show that the missing evidence or unavailable testimony "could" or "may" help the defendant. Instead, the defendant must show that the evidence or testimony *would* help the defendant. Indeed, in *Walls*, this court rejected a claim of actual prejudice even after noting that the missing evidence "may" have prejudiced the defendant. *Walls* at ¶ 56. The requirement set forth in *Jones*, however, illustrates that a defendant must show that the missing evidence or unavailable testimony would aid him or her.

{¶ 18} The bottom line is that under *Jones*, the defendant must show that the missing evidence or unavailable testimony would have minimized or eliminated the impact of the state's evidence and bolstered the defense. One might argue that this is a high standard for defendants, but the standard is commensurate with the defendant's burden in these cases. Indeed, as this court noted in *Adams*, "[t]he burden upon a defendant seeking to prove that preindictment delay violated due process is nearly ' "insurmountable." ' " 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 100, quoting *United States v. Montgomery*, 4921 Fed.Appx. 683, 691 (6th Cir.2017), quoting *United States v. Rogers*, 118 F.3d 466, 477 (6th Cir.1997), fn. 10. We further note that while it may be difficult to prove a pretrial claim for preindictment delay, a defendant is not barred from seeking review of a preindictment-delay claim at the close of trial, when the impact and significance of missing evidence or unavailable testimony may be clearer.

{¶ 19} Neither of the parties here has presented a compelling argument for modifying the actual-prejudice approach. We affirmed this approach in *Luck* and, without dissent, in *Jones* six years ago, as the United States Supreme Court did in *Marion*.

*B. Bourn failed to provide evidence of actual prejudice*

**{¶ 20}** Having affirmed that the framework detailed in *Jones* is the proper method to apply in analyzing this case, we now proceed to determine whether Bourn presented evidence of actual prejudice.

**1. Actual-prejudice determinations in previous cases**

**{¶ 21}** This court did not determine in *Jones* whether the defendant had established actual prejudice but rather remanded the case to the court of appeals to make that determination in the first instance by applying the actual-prejudice standard set forth in *Jones* and *Luck*. *Jones* at ¶ 29. This court has, however, engaged in an actual-prejudice analysis in other cases. A brief review of those cases informs our approach to this one.

a. *State v. Luck*

**{¶ 22}** In *Luck*, 15 Ohio St.3d at 157-158, 472 N.E.2d 1097, the defendant, nearly 15 years after a murder had occurred, told a law-enforcement officer that a witness had been at the victim's apartment at the time that the defendant killed the victim, allegedly in self-defense. This court determined that the confession was obtained in violation of the defendant's right to counsel. This court found that actual prejudice existed because the witness that the defendant claimed was the only person who could verify her story of self-defense was dead. *Id.* at 157. In finding actual prejudice, this court stated that "the defendant * * * is obviously prejudiced by not being able to seek verification of her story from [the witness] and thereby establish mitigating factors or a defense to the charge against her." *Id.* at 158.

b. *State v. Walls*

**{¶ 23}** In *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 50, 53, the defendant argued that the passage of 13 years before an indictment was handed down had resulted in the loss of exculpatory evidence that would have implicated another person in a murder, thus constituting actual prejudice. The defendant asserted that a deceased coroner's investigator could have placed the time

8

of the victim's death during school hours, missing school-attendance records would have shown that he was in school during the murder, unavailable witnesses would have implicated another person in the murder, the death of the lead investigator had foreclosed the possibility of testimony regarding why that other person had been considered a suspect, a missing tape made by a neighbor would have given a description of the true murderer, a missing faucet handle from the victim's home had a blood stain on it, and a missing anonymous letter had discussed who had committed the murder. *Id*. at ¶ 53. This court concluded that "[a]lthough some prejudice may have occurred from evidence lost over the years," the defendant's claims of prejudice were speculative at best. *Id*. at ¶ 56. This court did not, however, engage in any significant analysis to show how it had reached this conclusion.

c. <em>State v. Adams</em>

{¶ 24} In *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 103-106, the defendant based his claim of prejudice on the death of a witness, the alleged loss of some grand-jury records, the fading of witness memories, and the fading of his own memory. This court found that Adams failed to meet his burden of showing prejudice. *Id*. at ¶ 107. In doing so, this court noted that Adams had failed to explain what exculpatory testimony the deceased witness would have given and, moreover, that the death of the witness may have actually benefitted the defendant because the witness, before he died, had implicated the defendant in the murder. *Id*. at ¶ 103. In rejecting the argument relating to grand-jury records, this court noted that the records had been found. *Id*. at ¶ 104. We also reasoned that the fading of witness memories alone will not constitute actual prejudice. *Id*. at ¶ 105. Finally, in regard to the fading of Adams's own memory, which he claimed prevented him from remembering potential alibi witnesses, we noted that other testimony about the timing of the victim's death rendered any potential alibi-witness testimony irrelevant. *Id*. at ¶ 106.

### 2. Bourn failed to meet his burden

{¶ 25} Applying the framework set forth in *Jones* in this case, Bourn failed to show that the evidence he claims is missing or the testimony he claims was unavailable would have minimized or eliminated the impact of the state's evidence or bolstered his defense.

{¶ 26} Bourn argues that he was actually prejudiced by the following:

• The loss of records of alleged phone calls between Bourn and N.J.

• The case file

• The demolition of the house where the incident allegedly occurred.

The Eighth District and the trial court also found actual prejudice based on the following:

• The closing of the bar

• The death of the investigator.

a. The loss of records of alleged phone calls

{¶ 27} Here, Bourn's strongest argument that he was actually prejudiced by the preindictment delay involves the loss of the records of the alleged phone calls between him and N.J. Bourn asserts that these records would have shown that phone calls between him and N.J. took place. He argues that the proof of the existence of those phone calls would bolster his claim that the sexual encounter was prearranged and consensual and would undermine N.J.'s credibility because she had denied knowing who the alleged rapist was and had stated that she never received any calls from Bourn.

{¶ 28} The loss of the phone records, however, does not establish actual prejudice. This court did note in *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 25, that "*the proven unavailability of specific evidence* or testimony that *would* attack the credibility or weight of the state's evidence against a defendant and thereby aid in establishing a defense *may* satisfy the due-process

requirement of actual prejudice." (Emphasis added.) In this case, however, it is uncertain whether Bourn made any phone calls to N.J. Because those phone calls may not have taken place, Bourn has not proved that the evidence ever existed. And if the evidence never existed, then he cannot rely on it in making an actual-prejudice claim based on the unavailability of the evidence.

{¶ 29} Second, it is not clear, even if the phone calls did take place, that the phone records would have minimized or eliminated the impact of the state's evidence and bolstered the defense. Records of the phone calls would have undermined N.J.'s credibility to some extent because she claimed that no phone calls had taken place. But the fact that phone calls had taken place would not necessarily minimize or eliminate the impact of the state's evidence in regard to the consent element of rape. But lying about phone calls does not mean that N.J. consented to have sex with Bourn. Moreover, the existence of the phone calls would not have undermined the testimony of N.J.'s friend, who had stated that N.J. was unresponsive, thus indicating the lack of consent, when the friend found Bourn having sex with N.J.

{¶ 30} Because Bourn did not prove that the records would have shown that phone calls took place between him and N.J., and because any records showing that those phone calls did take place would not necessarily minimize or eliminate the impact of the state's evidence that the sex was nonconsensual, Bourn has not shown actual prejudice stemming from the inability to obtain those records.

b. The case file

{¶ 31} Bourn acknowledges that it is unclear whether a case file existed. He argues that if one did exist, it would presumably have contained relevant information. Bourn, however, points to nothing concrete that may have existed in the case file that "would minimize or eliminate the impact of the state's evidence and bolster the defense." *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 28. In essence, his argument in regard to the case file is purely speculative:

he only generally asserts that if a case file existed, it would presumably have contained relevant information. He gives no specifics regarding that relevant information. Because this argument is based on speculation, Bourn has not shown actual prejudice.

c. The demolishing of the house where the incident allegedly occurred

{¶ 32} Bourn argues that if the house where N.J. lived still existed, and if it showed no signs of forced entry, his claim that the sex was consensual would have been bolstered and N.J.'s claim that Bourn had raped her would have been undermined.

{¶ 33} This argument is too attenuated to give it credit. First, there is a temporal problem. Even if the house still existed, any signs of forced entry might have been repaired, so the condition of the house likely would not have provided any evidence relevant to Bourn's case.

{¶ 34} Second, there is a factual problem. Whether the house showed signs of forced entry even the day after the incident does not answer the question whether Bourn and N.J. had consensual sex. Bourn might have found a way into the house without leaving a trace of forced entry. And even proof that he had been invited into the house does not prove that the sex was consensual. Because Bourn's argument is too attenuated and speculative, Bourn fails to show actual prejudice.

d. The closing of the bar and the death of the investigator

{¶ 35} In his brief, Bourn does not address his arguments below regarding the closing of the bar and the death of the investigator. Nevertheless, for the sake of providing a complete analysis, we will briefly address them. The Eighth District noted that the bar is now out of business and that Bourn claimed that he would not have been at the bar because he did not drink alcohol. But, even if the bar were still open, it is not likely that Bourn would be able to obtain testimony that he never went there or that he was not there on the evening in question. Put simply, Bourn has not established that if the bar were still open for business, he would be able to

obtain evidence that would minimize or eliminate the impact of the state's evidence and bolster his defense.

{¶ 36} As with the case file, any argument regarding the investigator's death is purely speculative, because it is not clear what information the investigator may have had that would minimize or eliminate the impact of the state's evidence and bolster the defense. Because any argument connected to this point is speculative, Bourn cannot show actual prejudice.

e. The Eighth District erred in concluding that Bourn demonstrated actual prejudice

{¶ 37} In sum, considering this case in light of the framework detailed in *Jones*, the Eighth District reached the wrong conclusion in this case. The defendant's burden in preindictment-delay cases is nearly insurmountable. *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 100. To meet this burden, Bourn must show that missing evidence or unavailable testimony would have minimized the impact of the state's evidence and bolstered the defense. *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 28. This case can be distinguished from *Luck*, 15 Ohio St.3d at 157-158, 472 N.E.2d 1097, in which the death of the lone eyewitness to the incident meant that the defendant could not show whether her self-defense claim was true. Instead, in this case, the best Bourn can do is show that the evidence and testimony—if the evidence even existed in the first place or if the unavailable witnesses had any relevant information—*might* have helped him to undermine a portion of the state's case. Because Bourn has not shown that there is any evidence that *would* minimize or eliminate the impact of the state's evidence and bolster the defense, we conclude that Bourn has failed to show actual prejudice under the standard set forth in *Jones*.

### III. CONCLUSION

{¶ 38} For the reasons stated above, the analysis set forth in *Jones* is controlling. We reiterate that in determining whether unconstitutional

13

preindictment delay has occurred in a rape case in which consent is at issue, the relevant inquiry is whether the defendant has shown actual prejudice. Applying that rule in this case, we conclude that Bourn has failed to demonstrate actual prejudice.

**{¶ 39}** The judgment of the court of appeals is reversed, and the case is remanded to the trial court for further proceedings.

Judgment reversed<br>and cause remanded.

O'CONNOR, C.J., concurs, with an opinion.

KENNEDY, J., concurs in judgment only.

DEWINE, J., concurs in judgment only, with an opinion.

BRUNNER, J., dissents, with an opinion joined by DONNELLY and STEWART, JJ.

_____

**O'CONNOR, C.J., concurring.**

**{¶ 40}** I agree that the analysis of *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, set forth in the lead opinion is the correct analysis for determining whether preindictment delay rises to the level of a constitutional due-process violation. To establish a violation of due process based on preindictment delay, a defendant must demonstrate actual prejudice. And because appellee, Melvin Bourn, failed to do so here, I concur in the lead opinion and the judgment reversing the judgment of the Eighth District Court of Appeals and remanding this matter to the Cuyahoga County Court of Common Pleas. I write separately, however, to stress that although a defendant's burden to establish a due-process violation as a result of preindictment delay is onerous, *see State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 100, it should not be unsurmountable.

**{¶ 41}** It is inarguably regrettable that this rape case languished for 12 years before appellant, the state of Ohio, indicted Bourn. It is unclear, despite vague

references to police reports in the transcript, what investigative steps the police took in the immediate aftermath of the alleged offense to identify the assailant. Although the police did not know Bourn's identity at the time of the alleged rape, had the state immediately submitted the victim's, N.J.'s, rape kit for DNA testing, it is likely that the test results would have identified Bourn, who had previously been convicted of gross sexual imposition and whose DNA had allegedly been on file with the state since 2002. The police, however, did not submit N.J.'s rape kit to the Bureau of Criminal Investigation for at least six years, and the prosecutor's office was not notified of a possible match between the evidence from the rape kit and Bourn until May 2017—12 years after the alleged rape.

{¶ 42} Despite the lengthy delay in testing the DNA samples from N.J.'s rape kit, the state nevertheless indicted Bourn within the applicable statute of limitations for rape. *See* R.C. 2901.13(A)(3)(a), Sub.H.B. No. 49, 147 Ohio Laws, Part I, 299. So, to justify dismissal of the indictment, Bourn bore the heavy burden of demonstrating that the preindictment delay rose to the level of a denial of due process. *See Jones* at ¶ 11 ("when unjustifiable preindictment delay causes actual prejudice to a defendant's right to a fair trial despite the state's initiation of prosecution within the statutorily defined limitations period, the Due Process Clause affords the defendant additional protection" beyond that provided by the Sixth Amendment to the United States Constitution). To do so, Bourn was required to establish that he suffered "actual prejudice" as a result of the delay, separate from any consideration of whether the delay was justifiable. *Id.* at ¶ 12, 14.

{¶ 43} I agree with the lead opinion that Bourn's strongest argument that he was actually prejudiced by preindictment delay concerns the alleged loss of cellphone records. Bourn claims that the delay prevented him from obtaining records from his cellular-service provider that would have established that he made multiple phone calls to N.J. prior to and after the alleged rape. Those phone calls, he maintains, would have bolstered his claim that the sexual encounter was

consensual and would have undermined the credibility of N.J.'s claim to the contrary and of her claim that she did not know and had not received any phone calls from Bourn.

{¶ 44} I agree with the lead opinion that the allegedly unavailable phone records "would not necessarily minimize or eliminate the impact of the state's evidence that the sex was nonconsensual." Lead opinion, ¶ 30. But I also agree with Bourn that, *if* they existed and *if* they corroborated Bourn's claims that he made calls to N.J., such evidence would have impeached N.J.'s story.

{¶ 45} As part of its determination that Bourn failed to establish actual prejudice based on the alleged loss of cellphone records, the lead opinion states that "it is uncertain whether Bourn made any phone calls to N.J." Lead opinion at ¶ 28. But the determination of actual prejudice requires a case-by-case consideration of the particular circumstances, *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 20, and I disagree with any suggestion that a showing of actual prejudice based on lost phone records always requires proof of what the phone records would show. Indeed, the dissenting opinion aptly describes the Catch-22 situation a defendant may face in attempting to demonstrate actual prejudice: "Apparently, Bourn must somehow show he actually made the phone calls without the records of those calls. But if he could show he made the phone calls, he would not be claiming he was prejudiced by the missing records." Dissenting opinion, ¶ 92.

{¶ 46} Because of the " ' "nearly insurmountable" ' " burden faced by a defendant claiming unconstitutional preindictment delay, *see Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 100, quoting *United States v. Montgomery*, 491 Fed.Appx. 683, 691 (6th Cir.2012), quoting *United States v. Rogers*, 118 F.3d 466, 477 (6th Cir.1997), fn. 10, the deck is stacked against a defendant. Courts must be careful to not make it *impossible* for a defendant to meet

that burden. Here, however, Bourn was not held to an impossible standard. Rather, the defense simply failed to diligently produce evidence of actual prejudice.

**{¶ 47}** Bourn claims that because of the delay, he was precluded from obtaining records from his cellphone provider, Revol Wireless, which went out of business before he was indicted. That Revol went out of business may be true, but that fact is not sufficient to establish that Bourn suffered actual prejudice. Beyond the fact that Bourn offered only his own self-serving statement that Revol was his cellular-service provider, he failed to demonstrate that phone records for phone numbers previously registered to Revol were unobtainable.

**{¶ 48}** At the hearing on Bourn's motion for reconsideration of his motion to dismiss for preindictment delay, Bourn presented testimony from an investigator employed by the Cuyahoga County Public Defender's office, who had been asked only to determine when Revol went out of business. The investigator "discovered it was * * * maybe 2005 that they went out of business," but he did not even know whether Bourn even used a phone number belonging to Revol. The investigator had not been provided Bourn's phone number to confirm that it was registered to Revol or to attempt to retrieve Bourn's phone records. Although the investigator stated generally that he could not "obtain phone records *from*" Revol (emphasis added), there is no evidence that phone records linked to Revol accounts were otherwise unavailable. The barebones statements that Bourn used Revol's cellular service and that Revol went out of business is woefully insufficient to demonstrate that Bourn suffered actual prejudice because of an inability to obtain phone records from Revol.

**{¶ 49}** Furthermore, there is no indication that Bourn attempted to obtain from other sources evidence regarding the phone calls and his alleged prior meeting with N.J. Had Bourn placed phone calls to N.J., evidence of those calls should have also been available from N.J.'s cellphone or cellular-service provider. Bourn has not argued that his counsel sought, but was unable to obtain, N.J.'s phone records

to demonstrate the existence of incoming phone calls from Bourn's phone number, thereby corroborating Bourn's testimony. Additionally, Bourn testified that he was walking with a friend when he met N.J. and obtained her phone number the day before the alleged rape. Bourn identified that friend at the hearing on his motion for reconsideration and then agreed that if he had wanted to look for him, he probably could have found him. Had Bourn located that friend and called him as a witness, the friend could have verified Bourn's testimony that he met N.J. and obtained her phone number and thus impeached N.J.'s statements to the contrary. We have previously suggested that a defendant cannot make a showing of actual prejudice based on unavailable evidence when the evidence could have been obtained by other means. *See Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 103, citing *United States v. Rogers*, 118 F.3d 466, 475 (6th Cir.1997). Despite the high hurdle for establishing actual prejudice stated in *Jones*, Bourn offers no explanation for not pursuing such evidence.

{¶ 50} Bourn's claim of actual prejudice based on the missing cellphone records does not fail simply because he did not establish that he, in fact, made phone calls to N.J. More fundamentally, Bourn did not establish that his phone records were unavailable. He offered no proof that Revol was his cellular-service provider or that his phone records could not be obtained from someone other than Revol. Moreover, the likely existence of other evidence from N.J.'s cell phone or cellular-service provider or from the friend who was allegedly accompanying Bourn when he obtained N.J.'s phone number—evidence that would have had similar evidentiary value to Bourn—undercuts Bourn's argument that he suffered actual prejudice from the absence of the phone records.

{¶ 51} For these reasons, I concur in the lead opinion and the judgment reversing the court of appeals' judgment and remanding this matter to the trial court for further proceedings.

_____

**DEWINE, J., concurring in judgment only.**

**{¶ 52}** I agree with the lead opinion that Melvin Bourn has failed to show that the state's delay in indicting him violated the Due Process Clause of the United States Constitution. I write separately because the standard that this court applies for claims of preindictment delay has impermissibly departed from the governing standard announced by the United States Supreme Court. We are duty bound to follow the United States Supreme Court in its interpretation of the United States Constitution. I would do so.

### I. The lead opinion correctly finds that there was no actual prejudice

**{¶ 53}** This case involves a rape alleged to have occurred in 2005 that was not indicted until 2017. Melvin Bourn admits to having had sex with the victim but contends that it was consensual. The state filed the rape charges within the statute-of-limitations period. Nevertheless, the trial court dismissed the charges on the basis that the delay between the incident and the indictment violated the Due Process Clause of the United States Constitution. In doing so, the trial court applied a two-part, burden-shifting test previously announced by this court. Under that test, a defendant must first present evidence that the preindictment delay caused actual prejudice. Lead opinion, ¶ 11, citing *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 14. Once such evidence has been produced, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *Id*.

**{¶ 54}** In finding actual prejudice, the trial court premised its decision primarily on the loss of cellphone records that, Bourn maintained, would have corroborated his consent defense. The Eighth District Court of Appeals affirmed, speculating that missing phone records might bolster Bourn's theory that the victim invited him to her home on the night in question. 2019-Ohio-2327, ¶ 14.

**{¶ 55}** The lead opinion correctly concludes that Bourn failed to establish "actual prejudice." Lead opinion at ¶ 37. Bourn did not offer anything more than

his own testimony to establish that the phone records would show phone contact between him and the victim. And even if the phone records would have shown such contact, phone communication with the victim does not equate to an invitation to her home. And proof of an invitation to her home would not equate to proof of consent to engage in sexual conduct. *See* Rape, Abuse & Incest National Network, *Perpetrators of Sexual Violence: Statistics*, RAPE, ABUSE & INCEST NATIONAL NETWORK, https://www.rainn.org/statistics/perpetrators-sexual-violence (accessed November 28, 2022) [https://perma.cc/J68H-XPAE] ("8 out of 10 rapes are committed by someone known to the victim"). Moreover, phone records could not rebut the state's position that the victim was too intoxicated to give consent. I therefore agree with the lead opinion that Bourn has not demonstrated actual prejudice from the loss of phone records. Lead opinion at ¶ 28.

### II. This court has applied the wrong preindictment-delay standard

{¶ 56} The lead opinion helpfully clarifies that speculative claims of prejudice are not enough. Nonetheless, it continues to apply a standard for preindictment-delay claims that strays from the standard set forth by the United States Supreme Court. It reiterates that under our caselaw, once actual prejudice has been established, the burden shifts to the state to justify the delay. Lead opinion at ¶ 11, citing *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 14. But as I will explain, this standard is different from the one applied by the United States Supreme Court. I would take this opportunity to align our caselaw with the controlling United States Supreme Court authority.

#### A. United States Supreme Court caselaw on preindictment delay

{¶ 57} The United States Supreme Court has explained that there are three primary protections against delay in the prosecution of a criminal case. The most notable "check[] against delay" is the statute of limitations. *See Betterman v. Montana*, 578 U.S. 437, 441, 136 S.Ct. 1609, 194 L.Ed.2d 723 (2016). Such laws

establish that the state's time limit to prosecute is "fixed by the legislature and not decreed by courts on an ad hoc basis." *Doggett v. United States*, 505 U.S. 647, 665-666, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (Thomas, J., dissenting).  A statute of limitations reflects the "legislative assessments of relative interests of the State and the defendant in administering and receiving justice." *United States v. Marion*, 404 U.S. 307,  322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).  Under the law applicable to Bourn's conduct, the state may commence a prosecution for rape "within twenty years after the offense is committed."  Former R.C. 2901.13(A)(1)(3)(a), Sub.H.B. No. 49, 122 Ohio Laws, Part I, 299.

**{¶ 58}** In addition to the protection of the statute of limitations, the Speedy Trial Clause protects "the accused" from excessive delay between *indictment* and *trial*.  United States Constitution, Amendment VI.  But that right "afford[s] no protection to those not yet accused."  *Marion* at 313.  Finally, "the Due Process Clause always protects defendants against fundamentally unfair treatment by the government in criminal proceedings."  *Doggett* at 666 (Thomas, J., dissenting); *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

**{¶ 59}** The United States Supreme Court has twice addressed "the circumstances in which the Constitution requires that an indictment be dismissed because of delay between the commission of an offense and the initiation of prosecution."  *United States v. Lovasco*, 431 U.S. 783, 784, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *Marion* at 324.

**{¶ 60}** In *Marion*, the court indicated for the first time (in dictum) that preindictment delay violates the Due Process Clause of the Fifth Amendment if two conditions are met.  *Marion*, 404 U.S. at 324, 92 S.Ct. 455, 30 L.Ed.2d 468.  First, that delay must have caused "substantial prejudice to [the] right[] to a fair trial"; second, the prosecution must have used delay as "an intentional device to gain tactical advantage over the accused."  *Id.*

**{¶ 61}** A few terms later in *Lovasco*, the Supreme Court clarified that a showing of prejudice is "necessary but not sufficient" for the Due Process Clause to preempt prosecution. *Lovasco* at 790. Any delay can prejudice the defendant, the court explained, but that doesn't make it unconstitutional. "[T]he Due Process Clause does not permit courts to" second guess "a prosecutor's judgment as to when to seek an indictment." *Id.* Only departures from " 'fundamental conceptions of justice' " violate due process. *Id.* at 790, quoting *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935) (per curiam). In contrast, a dissenting justice would have dismissed the indictment because the government "offered no justification for the [more than 18-month] delay" and the delay had "caused substantial prejudice." *Id.* at 800 (Stevens, J., dissenting).

**{¶ 62}** The two cases that *Marion* cited to support the proposition that prejudicial delay offends due process when it is a deliberate device to gain a tactical advantage—*Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.E.2d 1217 (1959)—are instructive. *Marion* at 324. *Brady* is the landmark decision that held that the prosecution violates due process by withholding material, favorable evidence from a defendant. *Brady* at 87. Similarly, *Napue* held that the state violates due process by failing to correct testimony that it knows to be false. *Napue* at 269. The common denominator of both cases is prosecutorial misconduct that undermines a trial's fairness—and legitimacy—thereby depriving liberty without due process of law.

**{¶ 63}** An unconstitutional preindictment-delay claim seeks to root out misconduct of the same nature. For that reason, *Marion* and *Lovasco* require showing that delay was a deliberate act—much the same as withholding exculpatory evidence or eliciting false testimony—to stack the deck against a defendant. Indeed, *Lovasco*'s author would later say: "The due process constraint is limited, and does not protect against delay which is not for a tactical reason but which serves no legitimate prosecutorial purpose." *United States v. MacDonald*,

456 U.S. 1, 20, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982) (Marshall, J., dissenting), citing *Lovasco.* The quintessential impermissible delay is that taken "for the purpose of rendering unavailable evidence favorable to the defense or which would tend to undercut the government's case." *United States v. Crouch*, 84 F.3d 1497, 1514 (5th Cir.1996), fn. 23 (en banc).

{¶ 64} Thus, to sustain a Due Process Clause claim for preindictment delay, *Marion* and *Lovasco* require that a defendant show (1) "actual prejudice" to the fair-trial right and (2) deliberate action on the part of the government to "gain tactical advantage." *Marion*, 404 U.S. at 324, 92 S.Ct. 455, 30 L.Ed.2d 468; *Lovasco*, 431 U.S. at 790, 795, 97 S.Ct. 2044, 52 L.Ed.2d 752. This is no easy standard to meet. Indeed, the federal courts are in harmony that "a defendant who moves to have his indictment dismissed for pre-indictment delay faces an uphill battle." *United States v. Lively*, 852 F.3d 549, 566 (6th Cir.2017); *United States v. Foxman*, 87 F.3d 1220, 1224 (11th Cir.1996), fn. 4 ("dismissing an indictment under the Due Process Clause for pre-indictment delay is rare"); *see also Lovasco* at 796 ("so few defendants have established that they were prejudiced by delay").

### B. *This court has departed from the controlling standard*

{¶ 65} This court's cases have distorted Supreme Court preindictment-delay precedent beyond recognition. In addition to establishing actual prejudice, *Marion* and *Lovasco* require the defendant to show that the state caused the delay with the intent to gain a tactical advantage over the accused. But this court holds that a due-process violation lies when the state cannot show that a prejudicial delay was "justifiable." *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 13. That's a big difference. In essence, we have eliminated the requirement that the defendant demonstrate that delay is the result of a deliberate act intended to gain tactical advantage.

{¶ 66} The court went awry the very first time it assessed such a claim in *State v. Luck*, 15 Ohio St.3d 150, 154, 472 N.E.2d 1097 (1984). There, the state's

"investigation remained at a stand-still for approximately fifteen years" largely due to a prosecutor's "error in judgment." *Id.* at 158-159. By the time "the state finally decided to commence its prosecution," two key witnesses had died. *Id.* at 159. The delay was both "prejudic[ial]" and "unjustifiable," and therefore, the court held, inconsistent with due process. *Id.*

**{¶ 67}** Even *Luck*'s prejudice analysis was flawed. The court rested its finding on this double-negative reasoning: "[I]t cannot be said that the missing evidence or the dead witnesses would not have minimized or eliminated the impact of the state's circumstantial evidence." *Id*. at 157. In plainer terms, the court thought it possible that the lost evidence could have aided the defendant. Pure speculation. That method of analysis looks nothing like the actual-prejudice showing required by *Marion* and *Lovasco*.

**{¶ 68}** To show actual prejudice, a defendant must identify specific evidence that, if it had not been lost, *would* help the accused in his defense. It is not enough to speculate that such evidence *could* help the defendant; rather, the defendant must affirmatively show that the missing evidence would be material and noncumulative. *Marion*, 404 U.S. at 326, 92 S.Ct. 455, 30 L.Ed.2d 468; *see United States v. Valenzuela-Bernal*, 458 U.S. 858, 872-873, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), citing *Lovasco* and *Marion* (government did not inflict actual prejudice by lawfully deporting two would-be witnesses, as the defendant made no "showing that the [testimonial] evidence lost would be both material and favorable to the defense"); *United States v. Bartlett*, 794 F.2d 1285, 1290-1291 (8th Cir.1986).

**{¶ 69}** As to *Luck*'s treatment of the state's reason for delay, far from inquiring into tactical delay intended to gain an advantage, this court required the state to produce a "justifiable reason for the delay in prosecution." *Luck*, 15 Ohio St.3d at 158, 472 N.E.2d 1097. Although the dissent in *Lovasco* would have required the government to justify prejudicial preindictment delay, *Lovasco*, 431

U.S. at 800, 97 S.Ct. 2044, 52 L.Ed.2d 752 (Stevens, J., dissenting), the majority reaffirmed that the delay must have been intended to disadvantage the defendant, *id.* at 795. In fact, the lower courts in *Lovasco* required a government justification for delay and the Supreme Court expressly disavowed that approach. *Id.* at 790. To be sure, the state can "offer[] a valid reason for the delay" to counter a defendant's tactical-advantage showing, *United States v. Brown*, 959 F.2d 63, 66 (6th Cir.1992), but that cuts in the opposite direction from a government-justification *requirement.*

{¶ 70} In *Luck*, this court said a delay is "unjustifiable" when it is sufficiently lengthy and "caused by negligence." *Luck* at 158. Soon after the *Luck* decision, the United States Supreme Court significantly undermined the negligence-based review that characterized *Luck*'s assessment of justification for delay. In *Arizona v. Youngblood*, the defendant challenged on due-process grounds the state's failure to preserve evidence, a failure that could "at worst be described as negligent." 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Rejecting this negligence standard, the Supreme Court held that "when the claim is based on loss of evidence attributable to the Government," the due-process inquiry centers on "good or bad faith on the part of the Government." *Id.*, citing *Marion* and *Lovasco*.

{¶ 71} Building on *Luck*'s miscomprehension of the applicable standard, this court has settled on a burden-shifting framework under which if the defendant demonstrates "actual prejudice," then the state must affirmatively justify its delay. *State v. Whiting*, 84 Ohio St.3d 215, 218, 702 N.E.2d 1199 (1998) ("with no evidence from the state explaining the delay, the defendant was entitled to a dismissal"); *see also State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 51; *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 99; *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 13. But this allocation of the burden to the state is directly contrary to the United States

Supreme Court's requirement that the defendant "adequately demonstrate[] that the pre-indictment delay by the Government violated the Due Process Clause." *Marion*, 404 U.S. at 325, 92 S.Ct. 455, 30 L.Ed.2d 468.

{¶ 72} Thus, our precedent departs from controlling United States Supreme Court precedent both in (1) holding that an unjustified delay is sufficient to support a due-process violation rather than requiring a deliberate act by the state designed to garner a tactical advantage and in (2) allocating the burden to provide a justification for the delay to the state.

## C. We should realign our precedent with that of the United States Supreme Court

{¶ 73} The most basic reason that we should realign our precedent with that of the United States Supreme Court is that our oath of office demands it. As justices, we swear an oath to the United States Constitution. And the Supremacy Clause, United States Constitution, Article VI, cl. 2, does not allow us the option of substituting our own interpretation of the Due Process Clause for that of the United States Supreme Court. *Martin v. Hunter's Lessee*, 14 U.S. 304, 340-341, 4 L.Ed. 97 (1816); *see also id.* at 347-348 (noting "the importance, and even necessity of uniformity of decisions throughout the whole United States, upon all subjects within the purview of the constitution" [emphasis omitted]).

{¶ 74} Furthermore, in misapplying the Due Process Clause, we give to courts power that belongs to political actors. We take from prosecutors and law-enforcement officials the executive power to prosecute crime. And we displace the "legislative assessments of relative interests of the State and the defendant" reflected in statutes of limitations. *Marion*, 404 U.S. at 322, 92 S.Ct. 455, 30 L.Ed.2d 468.

{¶ 75} This is all the more troubling because "dismissal of an indictment for preindictment delay represents a legal judgment * * * unrelated to factual guilt or innocence of the offense of which [one] is accused." *United States v. Scott*, 437

U.S. 82, 98-99, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). Our extra-constitutional standard thus diminishes "the ultimate question of guilt or innocence that should be the central concern in a criminal proceeding." *Stone v. Powell*, 428 U.S. 465, 490, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

{¶ 76} Predictably, this court's departure from the controlling standard has wrought improper dismissals of indictment in the lower courts, most prominently the Eighth District. *See, e.g.*, *State v. Dickerson*, 8th Dist. Cuyahoga No. 109434, 2022-Ohio-298, ¶ 34 (finding actual prejudice where a lost witness "could have bolstered his defense"); *State v. Jenkins*, 2022-Ohio-297, 184 N.E.3d 896, ¶ 32 (8th Dist.) (same); *State v. Kafantaris*, 2018-Ohio-1397, 110 N.E.3d 793, ¶ 22 (8th Dist.); *State v. Willingham*, 8th Dist. Cuyahoga Nos. 106706 and 107033, 2019-Ohio-1892, ¶ 32; *State v. Crymes*, 8th Dist. Cuyahoga No. 104705, 2017-Ohio-2655, ¶ 21. Other courts, too, have struggled to apply the standard. *See, e.g.*, *State v. Bost*, 5th Dist. Licking No. 2020 CA 00050, 2021-Ohio-2190, ¶ 56; *State v. Hines*, 3d Dist. Marion No. 9-19-07, 2019-Ohio-5039, ¶ 17 (multiple rape charges dismissed because of a six-year delay before indictment). It is long past time for us to get the law right.

### III. Conclusion

{¶ 77} I agree with the court's judgment that the state's prosecution of Bourn does not violate the Due Process Clause. But because the lead opinion applies a standard that departs from the one articulated by the United States Supreme Court, respectfully, I concur in judgment only.

---

**BRUNNER, J., dissenting.**

{¶ 78} I respectfully dissent, because I believe that this case should be dismissed as having been improvidently accepted. The lead opinion states that it is addressing confusion regarding the actual-prejudice standard while at the same time

recognizing that following our decision in *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, that standard is "firmly established." Because the actual-prejudice standard was fully clarified in *Jones*, I submit that no further confusion existed until today. I therefore dissent.

*1. We have already dismissed as improvidently accepted the same proposition of law in* State v. Willingham

{¶ 79} When appellant, the state, asked this court to accept jurisdiction, it argued that this is a felony case involving a substantial constitutional question and an issue of great public or general interest. It may be evident that this is a felony case, but beyond that, the state did not fairly explain what substantial constitutional question was at stake or what general or public interest the matter presented. The state argued, however, that because this court had already accepted an appeal with the same proposition of law, *State v. Willingham*, Supreme Court case Nos. 2019-0659 and 2019-0900,[1] we should accept this case as well. The state asked this court to also review this case to determine whether the trial court's dismissal was appropriate and to hold this appeal for a decision in *Willingham*. We accepted jurisdiction of the appeal and held it for a decision in *Willingham. See* 157 Ohio St.3d 1510, 2019-Ohio-5193, 136 N.E.3d 499.

{¶ 80} In *Willingham*, as in this case, the state asked that we find that a defendant who advances an argument of preindictment delay is required to show

---

1. The state initially appealed the decision of the Eighth District Court of Appeals in *Willingham* asserting a single proposition of law identical to the one at issue here. *See* Supreme Court case No. 2019-0659. However, the Eighth District sua sponte reconsidered its decision. The Eighth District did not issue its subsequent decision on reconsideration until after the state had filed its notice of appeal of the original decision in this court. The state then appealed the decision on reconsideration, asking this court to find that the Eighth District had improperly reconsidered its original decision after an appeal to this court had been perfected as well as to review the dismissal of the indictment against the defendant in that case, Christopher Willingham. *See* Supreme Court case No. 2019-0900. The matters were consolidated, and Willingham conceded that the Eighth District did not have jurisdiction to reconsider its original decision. This court vacated the Eighth District's decision on reconsideration, resolving the second appeal. 160 Ohio St.3d 346, 2020-Ohio-3475, 156 N.E.3d 346.

"concrete proof" of actual prejudice. *Willingham* involved sexual-assault charges, as does this case, and Willingham claimed his contacts with the victims were consensual, as does appellee, Melvin Bourn. *State v. Willingham*, 10th Dist. Cuyahoga Nos. 106706 and 107033, 2019-Ohio-1121, ¶ 9, 12. We declined to entertain the state's argument in *Willingham* and dismissed the first appeal as having been improvidently accepted. 160 Ohio St.3d 346, 2020-Ohio-3475, 156 N.E. 3d 903.

{¶ 81} Dismissal of the appeal left in place the Eighth District's decision, which had affirmed the trial court's dismissal of the indictment against Willingham. *Willingham*, 2019-Ohio-1121, at ¶ 1. In reaching that decision, the Eighth District applied the test for preindictment delay that was set forth in our decision in *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, including what the lead opinion here deems the key holding of that opinion: " 'Actual prejudice exists when missing evidence or unavailable testimony * * * would minimize or eliminate the impact of the state's evidence and bolster the defense.' " Lead opinion, ¶ 14, quoting *Jones* at ¶ 28.

### 2. *There is no need to clarify the actual-prejudice standard*

{¶ 82} At the same time that the lead opinion recognizes that the actual-prejudice standard in *Jones* is still " 'firmly established,' " *id*. at ¶ 11, quoting *Jones* at ¶ 13, it also asserts that there may be some confusion about what that standard is, *id*. at ¶ 16. But instead of clarifying anything about the actual-prejudice standard, the lead opinion merely reiterates the standard set forth in *Jones*. *Id*. at ¶ 1 ("The analysis set forth in *State v. Jones*, * * * is controlling. In determining whether unconstitutional preindictment delay has occurred, the relevant inquiry is whether the defendant has shown "actual prejudice"); *id*. at ¶ 38 ("the analysis set forth in *Jones* is controlling. We *reiterate* that in determining whether unconstitutional preindictment delay has occurred in a rape case in which consent

is at issue, the relevant inquiry is whether the defendant has shown actual prejudice" [emphasis added]).

{¶ 83} If this court is merely affirming *Jones* and reiterating its holding, this matter should be dismissed as improvidently accepted. But instead, the lead opinion is distracted by the state's argument that the Eighth District's preindictment-delay jurisprudence "has prove[d] to be inconsistent." In its brief, the state cites cases involving other instances of unavailable phone and text-message records in which the Eighth District has declined to find actual prejudice.

{¶ 84} For example, in *State v. Herrington*, 8th Dist. Cuyahoga No. 106225, 2018-Ohio-3049, the Eighth District applied the same framework that it set out in this case and in *Willingham*, citing the "key holding" in *Jones* for support. *Herrington* at ¶ 13. The appellate court did not disturb the trial court's determination that unavailable phone records and witness testimony did not cause actual prejudice. *Herrington* at ¶ 16. There is nothing in *Herrington* that is inconsistent with this case, *Willingham*, or *Jones*, except the outcome. The Eighth District reasoned that while Herrington claimed that he did not know the victim, unavailable phone records that would have been used to demonstrate consent would not bolster his innocence defense. *Herrington* at ¶ 16. But in *Herrington*, the Eighth District was reviewing the trial court's *denial* of a motion to dismiss for preindictment delay *after* Herrington had been tried and convicted.

{¶ 85} The state also cites *State v. McCoy*, 8th Dist. Cuyahoga No. 107029, 2019-Ohio-868, in which the Eighth District again referred to the actual-prejudice test set forth in *Jones*. *McCoy* at ¶ 13. The Eighth District held that the trial court did not err in denying McCoy's request for a dismissal, finding that McCoy failed to name any witnesses that could bolster his defense that the victim was fabricating her story. *Id.* at ¶ 14. And again, *McCoy* came before the court of appeals after the defendant was tried and convicted.

{¶ 86} These cases do not support the claim that the Eighth District inconsistently applies the "firmly established" framework in *Jones*. Inconsistent results are a necessary product of the case-by-case review of evidence that is required under the particular evidence framework involved. *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 20, quoting *State v. Walls,* 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52, and *United States v. Marion,* 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) ("A determination of actual prejudice involves ' "a delicate judgment' " and a case-by-case consideration of the particular circumstances").

{¶ 87} The state also argues that other appellate districts have used the "concrete proof" standard, or some variation of it, and therefore this court should clarify and adopt such a standard in this case and in other cases, like *Willingham.* But the cases cited by the state in support of this argument predate *Jones* and, therefore, do not demonstrate that there is any misunderstanding of the actual-prejudice standard after that decision was handed down.

{¶ 88} The lead opinion also entertains one more possible source of confusion: the state's reference to the use of a "substantial prejudice" standard by this court. The lead opinion admits that this court has referred to "substantial prejudice" "in the past" but yet again points to cases that predate *Jones*. *See* lead opinion at ¶ 15, citing *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, and *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127. These cases simply cannot be the basis for any confusion after *Jones*.

{¶ 89} This court declined the state's invitation to adopt the concrete-proof standard in *Willingham*, and the majority rejects that argument again here.[2]

---

2. "Neither of the parties here has presented a compelling argument for modifying the actual-prejudice approach. We affirmed this approach in *Luck* and, without dissent, in *Jones* six years ago, as the United States Supreme Court did in *Marion*." Lead opinion at ¶ 19.

Because there is no confusion regarding *Jones* or its application in the Eighth District, this matter should be dismissed as improvidently accepted, as was *Willingham*.

### 3. The lead opinion's error-correction analysis now creates confusion

{¶ 90} Because it rejects the state's proposition of law, affirms *Jones*, and declines to adopt a concrete- or substantial-proof standard, the lead opinion should end its analysis and dismiss this case. Instead, it engages in textbook error correction, and it even says that it is doing so. Lead opinion at ¶ 37 (The "Eighth District reached the wrong conclusion"). But it is not apparent that the court of appeals *was* wrong.

{¶ 91} The lead opinion relies on three cases to demonstrate why Bourn could not show that he was actually prejudiced by the missing evidence in his case. Those three cases were murder cases, and all three were decided before *Jones*. *See State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984); *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829; *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127. What's more, in *Jones*, this court cited one of those cases for the proposition that "a defendant need not know what the exact substance of an unavailable witness's testimony would have been in order to establish actual prejudice based on the witness's unavailability." *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 28 (referring to this court's analysis in *Luck*). And the lead opinion recognizes that under *Luck*, a defendant is " 'obviously prejudiced by not being able to seek verification of her story from [the witness] and thereby establish mitigating factors or a defense to the charge against her.' " (Brackets sic.) Lead opinion at ¶ 22, quoting *Luck* at 158.

{¶ 92} The analysis in Section B of the lead opinion is neither necessary nor relevant and does not aid appellate courts in applying the firmly established framework of *Jones*. Bourn is obviously prejudiced by the missing evidence, which would verify his story. When it comes to missing phone records, the justices

joining the lead opinion believe that a defendant like Bourn must show the phone calls were actually made before he can claim that he was prejudiced by the unavailability of the records showing that they were made. Lead opinion at ¶ 28. Bourn's testimony at the motion hearing, which included dates and times of the phone calls and was subject to cross-examination was—according to the majority—not enough to support the trial court's findings. Apparently, Bourn must somehow show he actually made the phone calls without the records of those calls. But if he could show he made the phone calls, he would not be claiming he was prejudiced by the missing records. This analysis does not work, and we should not divine what inferences were made by the trial court when we can deduce facts that are supported by the record. 2019-Ohio-2327, ¶ 12 (recognizing review of the legal issues is de novo, but with "deference to the findings of fact made by the trial judge").

### 4. Conclusion

**{¶ 93}** The lead opinion argues that the holding of *Jones* should be reaffirmed but does not appear to attempt to establish a new rule of law. I believe that we should avoid simply applying *Jones* to correct error and, rather, dismiss this matter as having been improvidently accepted. And if the lead opinion is attempting to establish a new test or clarify the test we set forth in *Jones*, then the proper exercise of judicial restraint would direct it majority to do as we did in *Jones*: remand the matter to the court of appeals to apply the correct standard in the first instance. *Jones* at ¶ 29.

DONNELLY and STEWART, JJ., concur in the foregoing opinion.

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van, Assistant Prosecuting Attorney, for appellant.

Cullen Sweeney, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, for appellee.

Joseph Deters, Hamilton County Prosecuting Attorney, and Alex Scott Havlin, Assistant Prosecuting Attorney, urging reversal for amicus curiae, Ohio Prosecuting Attorneys Association.

_____